565 So.2d 1332 (1990)
Honorable Mary Ann MacKENZIE, Petitioner,
v.
SUPER KIDS BARGAIN STORE, INC., Respondent.
Honorable Mary Ann MacKENZIE, Petitioner,
v.
Arthur BREAKSTONE and Beach Enterprises, Ltd., Respondent.
Nos. 74798, 74800.
Supreme Court of Florida.
July 19, 1990.
*1333 Robert A. Ginsburg, Dade County Atty., and Roy Wood, Asst. County Atty., Miami, for petitioner.
Murray B. Weil, Jr. of Shapiro and Weil, Miami Beach, for Super Kids Bargain Store, Inc.
William J. Berger of Hughes, Hubbard & Reed, and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for Arthur Breakstone and Beach Enterprises, Ltd.
Ronald A. Labasky and Keith C. Tischler of Parker, Skelding, Labasky and Corry, Tallahassee, amicus curiae for Conference of Circuit Judges.
Barry Richard of Roberts, Baggett, LaFace & Richard, Tallahassee, amicus curiae for The Florida Bar.
Charles H. Baumberger, President, and Gregory P. Borgognoni of Tew, Jorden & Schulte, Miami, amicus curiae for Dade County Bar Ass'n.
Edith Broida, Miami Beach, in pro. per., amicus curiae.
EHRLICH, Justice.
We have for review Breakstone v. MacKenzie, 561 So.2d 1164 (Fla. 1989), in which the Third District Court of Appeal granted en banc consideration of two petitions for writs of prohibition. The question common to the two petitions is whether disqualification of a judge is required on motion where an attorney appearing before the trial judge had made a $500 contribution to the political campaign of the trial judge's husband. The district court determined that the ground set forth by the movants is legally sufficient for disqualification. The district court then certified the above question as one of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The first of the motions to disqualify was filed by Breakstone, a defendant in a post-judgment *1334 garnishment proceeding. Breakstone's motion to disqualify the judge asserted by affidavit that counsel for plaintiff below had contributed $500 to the political campaign of the judge's husband; that the $500 contribution was the second largest amount contributed; and because of this substantial contribution, Breakstone feared that he would not receive a fair and impartial trial. The trial judge's husband was a candidate in a contested election for the office of circuit judge at the time the motion for disqualification was filed. The trial judge denied the motion as legally insufficient. On petition for writ of prohibition, a panel of the Third District Court of Appeal held that the substantial financial contribution by plaintiff's counsel constituted a legally sufficient ground for disqualification. Breakstone v. MacKenzie, 561 So.2d 1164 (Fla. 1988).
In the second case, the same $500 contributor represented the plaintiff. Super Kids Bargain Store, Inc., the defendant in that case, moved to disqualify the trial judge on the basis of the same $500 contribution, and the Third District Court's panel opinion in Breakstone. The trial judge opined that the motion for disqualification was legally sufficient, on the basis of the district court's panel opinion. Nonetheless, the trial judge first granted an ore tenus motion for substitution made by plaintiff's counsel and then denied Super Kids' motion for disqualification.
Super Kids' petition for writ of prohibition was consolidated with Breakstone for purposes of en banc consideration. After hearing and rehearing en banc, a majority of the Third District Court held that the ground set forth by the movants is legally sufficient for disqualification. The majority noted that
[t]he movants swore that they had a fear of prejudice on account of opposing counsel's $500 contribution to the election campaign of the judge's spouse. The relevant benchmark, while imprecise, is determined on a case by case basis. A $500 contribution is a substantial one by any standard. Certainly the ordinary litigant does not make, or have the financial capacity to make, a $500 contribution. Where the opposing litigant or opposing counsel has made such a contribution, a reasonable person in the position of movants would fear that he would not receive a fair trial.
561 So.2d at 1168. Accordingly, the court below ultimately concluded that the trial judge should have granted the motions for disqualification.
Section 38.10, Florida Statutes (1987), gives litigants a substantive right to seek the disqualification of a trial judge. This section provides, in part:
Whenever a party to any action or proceeding makes and files an affidavit stating that he fears he will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists. .. .
Florida Rule of Civil Procedure 1.432, which sets forth the procedural aspects of the disqualification process, provides:
(d) Determination. The judge against whom the motion is directed shall determine only the legal sufficiency of the motion. The judge shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall enter an order of disqualification and proceed no further in the action.
The facts alleged in the motion need only show a well-grounded fear that the movant will not receive a fair trial at the hands of the judge. "The question of disqualification focuses on those matters from which a litigant may reasonably question a judge's impartiality rather than the judge's perception of his ability to act fairly and impartially." Livingston v. State, 441 So.2d 1083, 1086 (Fla. 1983). In order to decide whether the motion is legally sufficient, *1335 "[a] determination must be made as to whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Id. at 1087. The legal sufficiency of the motion is purely a question of law.
It cannot be denied that some persons may perceive that the judge will be biased in favor of the contributing litigant or attorney based solely on the fact that a contribution was made. As noted above, however, the standard for determining whether a motion is legally sufficient is "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." 441 So.2d at 1087 (emphasis added). We conclude that an allegation in a motion that a litigant or counsel for a litigant has made a legal campaign contribution to the political campaign of the trial judge, or the trial judge's spouse,[1] without more, is not a legally sufficient ground. A judge is not required to disqualify himself or herself on motion based solely upon such alleged facts. Our conclusion is based upon the interplay of our state constitution, code of judicial conduct, and campaign statutes.
Article V, section 10(b), of the Florida Constitution provides that circuit judges and judges of county courts shall be elected by vote of the qualified electors within the territorial jurisdiction of their respective courts. Justices of the Supreme Court and judges of a district court of appeal may be retained in office by a vote of the electors in the general election next preceding the expiration of their term. Art. V, § 10(a), Fla. Const. By ratification of article V of the state constitution, the citizens of Florida have chosen to retain the power to elect county and circuit judges and the power to remove by vote judges of the district courts of appeal and justices of the Supreme Court. As with other elections, judicial elections involve campaigns. As with other campaigns, judicial campaigns require funds. Judicial campaigns and the resultant contributions to those campaigns, therefore, are necessary components of our judicial system.
This is not to say that contributions to judicial campaigns may never be cause for reasonable concern. Experience tells us otherwise. As this Court noted in Richman v. Shevin, 354 So.2d 1200, 1203 (Fla. 1977), cert. denied, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978), the United States Supreme Court has articulated two concerns raised by contributions to campaigns for public office: "1. The tendency or possibility to create a quid pro quo relationship and, 2. The creation of an appearance of influence or corruption."
Under a system of private financing of elections, a candidate lacking immense personal or family wealth must depend on financial contributions from others to provide the resources necessary to conduct a successful campaign. The increasing importance of the communications media and sophisticated mass-mailing and polling operations to effective campaigning make the raising of large sums of money an ever more essential ingredient of an effective candidacy. To the extent that large contributions are given to secure a political quid pro quo from current and potential office holders, the integrity of our system of representative democracy is undermined... .
.....
Of almost equal concern as the danger of actual quid pro quo arrangements is the impact of the appearance of corruption stemming from public awareness of the opportunities for abuse inherent in a regime of large individual financial contributions.... [T]he avoidance of the appearance of improper influence "is also critical ... if confidence in the system of representative Government is not to be eroded to a disastrous extent." [CSC v. Letter Carriers, 413 U.S. 548, 565, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973).]
*1336 Buckley v. Valeo, 424 U.S. 1, 26-27, 96 S.Ct. 612, 638-39, 46 L.Ed.2d 659 (1976). The appearance of impropriety or bias is of special concern where the branch of government involved is that charged with the duty of remaining impartial, i.e., the judiciary. However, we find that Florida's Code of Judicial Conduct together with Florida's statutory limitation upon campaign contributions and the requisite public disclosure of such contributions, provide adequate safeguards against the aboveidentified concerns regarding contributions to constitutionally mandated judicial campaigns and render the ground alleged in the motions at bar legally insufficient when presented as the sole ground for disqualification.
Canon 7(B) of the Code of Judicial Conduct provides in pertinent part:
(2) A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates should not himself solicit campaign funds, or solicit attorneys for publicly stated support, but he may establish committees of responsible persons to secure and manage the expenditure of funds for his campaign and to obtain public statements of support for his candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law. A candidate's committees may solicit funds for his campaign only within the time limitation provided by law. A candidate should not use or permit the use of campaign contributions for the private benefit of himself or members of his family.
(3) An incumbent judge who is a candidate for retention in office or re-election to office without a competing candidate, may conduct only limited campaign activities until such time as the judge certifies that his candidacy has drawn active opposition[[2]] Limited campaign activities shall include only the conduct authorized by subsection B(2), interviews with reporters and editors of the print, audio and visual media, and appearances and speaking engagements before public gatherings and organizations other than political parties... .
(Emphasis added.) This Canon eliminates direct solicitation and thereby insulates, to the extent possible, justices, judges, and judicial candidates from those asked to make contributions to the campaign. This insulation of judges and judicial candidates reduces the possibility of a quid pro quo relationship and serves to avoid the appearance of impropriety. As Judge Nesbitt recognized in his dissenting opinion below, Canon 7 serves to remove some of the basis "for fear of bias by a judge hearing a cause before litigants or counsel from whom he has received political contributions." Breakstone, 561 So.2d at 1175.
While not conclusive, other factors to be considered in determining the legal sufficiency of the asserted ground for disqualification in this case are Florida's statutory limitation on campaign contributions and the statutorily required disclosure of the names of contributors and the amounts of their contributions. §§ 106.07(4)(a); 106.08(1)(e)-(g), Fla. Stat. (1987). Section 106.08(1) provides in pertinent part:
(1) No person, political committee, or committee of continuous existence shall make contributions to any candidate or political committee in this state, for any election, in excess of the following amounts:
.....
(e) To a candidate for county court judge or circuit judge, $1,000.
(f) To a candidate for retention as a judge of a district court of appeal, $2,000.
(g) To a candidate for retention as a justice of the Supreme Court, $3,000.
Section 106.07, which mandates disclosure of contributors and the amount of contribution, provides in pertinent part:

*1337 (1) Each campaign treasurer designated by a candidate ... shall file regular reports of all contributions received ... by or on behalf of such candidate... .
.....
(4)(a) Each report required by this section shall contain:
1. The full name, address, and occupation, if any, of each person who has made one or more contributions to or for such committee or candidate within the reporting period, together with the amount and date of such contributions. However, if the contribution is $100 or less or is from a relative, as defined in s. 112.3135(1)(c), provided that the relationship is reported, the occupation of the contributor need not be listed, and only the name and address are necessary.
Judge Nesbitt, in his dissenting opinion below, opined that "the $1,000 contribution limitation must do more than act as mere notification to the public of contributor actions... . Rather, the limitation is our legislatively determined method of avoiding potential quid pro quo arrangements. It is a legislative determination that a contribution made in a sum under that limit cannot create a reasonable fear of bias in the mind of the litigant." Breakstone, 561 So.2d at 1175.[3] This legislative determination does not conclusively mandate a finding that no reasonably prudent person would fear they would not receive a fair and impartial trial because of a contribution within the statutorily allowed limit. The statutory limitation upon contributions does, however, reduce the possibility of a quid pro quo arrangement between the candidate and the contributor and also acts to eliminate any appearance of impropriety.[4]
The same is true of the financial disclosure requirements. The United States Supreme Court recognized that
disclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity. This exposure may discourage those who would use money for improper purposes either before or after the election. A public armed with information about a candidate's most generous supporters is better able to detect any post-election special favors that may be given in return.
Buckley, 424 U.S. at 67, 96 S.Ct. at 657. Thus, we believe Florida already has in place procedures which adequately safeguard the public interest in preventing the corruption, or the appearance of corruption, of our state judicial officers.
The dissenting opinions below noted, "the practice which the [district] court holds requires disqualification is, directly to the contrary, fully supported and justified by our statutory and constitutional law. Even more, it is affirmatively encouraged by our legal and judicial system." Breakstone, 561 So.2d at 1177 (Schwartz, J., dissenting). See also id. at 1176, 1177 (Nesbitt, J., dissenting). In Florida, as in Nevada, "leading members of the state bar play important and active roles in guiding the public's selection of qualified jurists. Under these circumstances, it would be highly *1338 anomalous if an attorney's prior participation in a justice's campaign could create a disqualifying interest, an appearance of impropriety or a violation of due process sufficient to require the justice's recusal from all cases in which that attorney might be involved." Ainsworth v. Combined Ins. Co. of America, 774 P.2d 1003, 1020 (Nev.), cert. denied. ___ U.S. ___, 110 S.Ct. 376, 107 L.Ed.2d 361 (1989).
Further, as Chief Judge Schwartz noted below, "[w]e cannot operate a judicial system, or indeed a society, on the basis of the factually unsubstantiated perceptions of the cynical and distrustful." Breakstone, 561 So.2d at 1178. There are countless factors which may cause some members of the community to think that a judge would be biased in favor of a litigant or counsel for a litigant, e.g., friendship, member of the same church or religious congregation, neighbors, former classmates or fraternity brothers. However, such allegations have been found legally insufficient when asserted in a motion for disqualification. See, e.g., In re Estate of Carlton, 378 So.2d 1212 (Fla. 1979) (Overton, J., Denial of Request for Recusal), cert. denied, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980); Ervin v. Collins, 85 So.2d 833 (Fla. 1956). The same is true of the ground for disqualification asserted at bar. Contributions such as the one at issue are normal incidents in a campaign for public office. As long as it appears that a contribution was a normal incident in such a campaign, "[i]t does not tend to indicate any closer relation between the contributor and the recipient than would ordinarily exist between members of the same local bar." Frade v. Costa, 342 Mass. 5, 171 N.E.2d 863, 865 (1961).[5] Accordingly, we quash that portion of the decision below which holds that the ground set forth by movants, opposing counsel's $500 contribution to the election campaign of the judge's spouse, is legally sufficient to mandate disqualification and we answer the certified question in the negative.
In the cases at bar, however, further inquiry is made necessary by events which transpired at the respective hearings on the motions to disqualify. At the hearing on Breakstone's motions including the motion to disqualify, after announcing that the motion for disqualification was denied, Judge MacKenzie stated:
I cannot address your motion as far as the truth or misinformation that you may have or not have or anything like that.
But I will state for the record that I kept absolutely clear of my husband's campaign, had nothing to do with it whatsoever. Couldn't go to a judicial luncheon  I went to one and it was followed all over by The Miami Herald, and that's the last time I went to anything. And who donated to his campaign and who did not donate to his campaign, I don't know. I have not looked at his records. So in no way could I be prejudiced."
Later, during the course of the hearing, she expressed her "frustration for not being *1339 in my husband's campaign... . In fact, if I had been in it, he would have won, and that's for real." A renewed motion for disqualification was made on the ground that the trial judge had impermissibly commented on the merits of the disqualification motion. This motion was likewise denied.
Although we have concluded that the ground for disqualification asserted in the initial motion was legally insufficient, we agree with the decision below that Breakstone's subsequent motion for disqualification should have been granted. This Court noted in Bundy v. Rudd, 366 So.2d 440, 442 (Fla. 1978), that:
Regardless of whether respondent ruled correctly in denying the motion for disqualification as legally insufficient, our rules clearly provide, and we have repeatedly held, that a judge who is presented with a motion for his disqualification "shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification." When a judge has looked beyond the mere legal sufficiency of a suggestion of prejudice and attempted to refute the charges of partiality, he has then exceeded the proper scope of his inquiry and on that basis alone established grounds for his disqualification. Our disqualification rule, which limits the trial judge to a bare determination of legal sufficiency, was expressly designed to prevent what occurred in this case  the creation of "an intolerable adversary atmosphere" between the trial judge and the litigant.
(Emphasis added; citations omitted.) In ruling on Breakstone's motion for disqualification, Judge MacKenzie went beyond a mere determination of the legal sufficiency of the motion and passed upon the truth of the facts alleged.[6]
Super Kids became aware of the panel decision of the Third District Court of Appeal in Breakstone and filed a motion for disqualification on December 5, 1988. At the hearing on the motion, Judge MacKenzie asked the contributing attorney if he had any response to the motion. He replied that he had spoken with counsel who would take over the case for his client and requested an ore tenus motion for his office to withdraw and for independent counsel to be substituted. Judge MacKenzie then stated that the "recusal is sufficient," but proceeded to first grant the ore tenus motion to withdraw and then deny the motion for recusal. Judge MacKenzie contends the fact that "the contributing attorney was allowed to withdraw prior to denial of the disqualification motion only reinforces the validity of that denial." We disagree.
At the time of the hearing on Super Kids' motion for disqualification, the panel decision of the Third District Court holding that the ground alleged was legally sufficient to mandate recusal was controlling precedent. Accordingly, Judge MacKenzie should have granted Super Kids' motion for disqualification. Florida Rule of Civil Procedure 1.432(d) provides: "If the motion is legally sufficient, the judge shall enter an order of disqualification and proceed no further in the action." (Emphasis added.) We agree with the decision below that a judge faced with a motion for recusal *1340 should first resolve that motion before making any other rulings in a case. As the district court noted, "[n]ot only is the procedure well established, but the approach taken here creates, rather than dissipates, a perception that the trial judge attempted to retain the case as an accommodation to withdrawing counsel." Breakstone, 561 So.2d at 1172. Although we have concluded that the ground asserted in the motion was not legally sufficient, the procedure employed at the hearing, magnified by the perceived deferential treatment accorded the contributing counsel, mandates entry of an order of disqualification.
In summary, we answer the certified question in the negative and quash that portion of the decision below which holds that a trial judge is required to disqualify herself or himself on motion where counsel for a litigant has given a $500 campaign contribution to the political campaign of the trial judge's spouse. Because of factors unrelated to the ground asserted in the motions which arose out of the hearings conducted by Judge MacKenzie on the motions at issue, however, we conclude that recusal is warranted in both causes. We therefore approve the result below. Accordingly, we remand these cases to the district court with directions to grant the petitions for writ of prohibition.
It is so ordered.
McDONALD and GRIMES, JJ., concur.
BARKETT and KOGAN, JJ., concur specially with opinions.
OVERTON, J., concurs in result only with an opinion.
SHAW, C.J., recused.
BARKETT, Justice, concurring specially.
I agree with the majority and with Justice Kogan's concurring opinion suggesting that alternatives should be found to address the issues presented in this case. I write only to add that merit-retention elections requiring judges to solicit campaign funds are subject to the same concerns as those presented here. Therefore, although merit retention improves the situation, it is not the answer to the problem.
KOGAN, Justice, specially concurring.
I concur in the majority's opinion because I believe it endorses the lesser of the evils from which we must choose. And in so concluding, I have many regrets.
I have absolutely no doubt that the present system of electing judges spawns distrust of the judiciary and creates opportunities for abuse. This in itself merits much soul-searching. As a general rule, attorneys contribute the bulk of judges' campaign money. Later, many of these same attorneys appear in the courts of the judges to whom they have donated. At first blush, this appears to be a system that allows judges to reward the attorneys who have contributed to their election campaigns.
However, the approach adopted by the court below is far more troubling, for practical reasons that may not be readily apparent to nonlawyers. Thus, while I share the concerns raised by Justice Overton in his concurring opinion, I believe the better policy is that adopted by the majority.
First and foremost, the district court's rule easily could be abused by lawyers and litigants. Attorneys who wished to steer their cases away from a particular judge need do no more than contribute a large sum to that judge's campaign. While appearing to support the judge, these attorneys in actuality would be buying "insurance" that the judge could never hear their cases. The paradoxical result might be that the most disliked judges would receive large campaign contributions while the better judges would receive none at all from lawyers. In the meantime, attorneys could "shop" for the judges they want simply by cutting a check at election time. This result clearly would violate the policy against allowing forum shopping by attorneys.
Second, the rule adopted by the district court would create an administrative nightmare. Countless numbers of attorneys have contributed to countless judicial campaigns in recent years. If each such contribution is a potential cause to remove the *1341 judge, then our courts will become choked with motions for disqualification. This particularly might be true in cases involving large numbers of attorneys. In such instances, there literally might be no judge in the circuit who could sit in the case.
Third, under the rule adopted by the district court, qualified candidates wishing to seek or retain judicial office largely will be cut off from the only major source of campaign financing today  other lawyers. As a result, many qualified candidates simply will not run for office. Those who do run will be forced either to spend large sums of their own money or to obtain nonlawyer patrons willing to donate the wherewithal. Such a system would favor the wealthy; and it opens the disturbing possibility that well-heeled political action committees or other special interests will become crucial participants in Florida judicial campaigning of the future. Certain types of special interests might seize upon this system to back judicial candidates who favor their particular political agendas, regardless of the candidates' qualifications for judicial office.
Given the two alternatives presented by this case, I believe the better course is to trust the integrity of our judges. Most judges in this state simply are not swayed by the fact that an attorney has contributed money to the judge's campaign, particularly in light of the ceilings imposed upon contributions by present Florida law. On the other hand, a per se rule requiring disqualification almost certainly will lead to forum shopping by lawyers, administrative chaos, diminishment in the ranks of qualified judicial candidates, and the use of special-interest money to finance judicial campaigns.
While I share the concerns raised by Justice Overton, I cannot help but note that the problems presented by this case more readily might be resolved by action of the legislature and electorate of Florida. A merit-retention system for trial-level judges, for instance, could eliminate the bulk of the problem, since most merit-retention elections are uncontested. Likewise, some type of public financing of judicial campaigns also would help prevent the use of contributions to influence official action. So long as judicial seats can be filled by elections financed by private campaign contributions, we in Florida must live with a system that opens the door to some type of abuse.
The present system of allowing lawyers to contribute to judges' campaigns  dissatisfactory as it is  poses fewer problems than would the decision of the Third District. Thus, I concur with the majority.
OVERTON, Justice, concurring in result only.
While I concur in the result, I strongly disagree with the majority's conclusion that a judge's impartiality may not be challenged under Canon 3C when the judge has received a $500 contribution in a political campaign. In my view, the majority improperly concludes that such a contribution does not justify a finding that the judge's "impartiality might reasonably be questioned." Fla. Bar Code Jud. Conduct, Canon 3 C(1).
The credibility of our justice system is deeply involved in this issue. Should an ordinary citizen who is involved in a contested court case be deemed unreasonable for expressing concerns about the fairness and impartiality of a judge under circumstances where the opposing lawyer has contributed $500 to the political campaign of the judge or the judge's spouse? I note that, in this instance, the contribution happens to be the second largest one made to this candidate and that the campaign was ongoing at the time of the motion for disqualification. I find that a litigant's concern about a judge's impartiality in these circumstances is a reasonable and normal reaction, whether the contribution is to the judge or to the judge's spouse.
The Code of Judicial Conduct, in Canon 3 C(1), states that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned." (Emphasis added.) We have previously construed that provision, finding that it is

*1342 totally consistent with the case law of this Court, which holds that a party seeking to disqualify a judge need only show "a well grounded fear that he will not receive a fair trial at the hands of the judge. It is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such feeling." State ex rel. Brown v. Dewell, 131 Fla. 566, 573, 179 So. 695, 697-98 (1938). See also Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981). The question of disqualification focuses on those matters from which a litigant may reasonably question a judge's impartiality rather than the judge's perception of his ability to act fairly and impartially.

Livingston v. State, 441 So.2d 1083, 1086 (Fla. 1983) (emphasis added). As this statement clearly points out, the proper consideration is not whether a lawyer would question a judge's impartiality, it is whether an ordinary litigant would reasonably question the judge's impartiality. The issue involves the public confidence in the integrity of the judicial system. We have previously recognized the importance and sensitivity of this question and stated:
Prejudice of a judge is a delicate question to raise but when raised as a bar to the trial of a cause, if predicated on grounds with a modicum of reason, the judge against whom raised, should be prompt to recuse himself. No judge under any circumstances is warranted in sitting in the trial of a cause whose neutrality is shadowed or even questioned.
... .
... It is a matter of no concern what judge presides in a particular cause, but it is a matter of grave concern that justice be administered with dispatch, without fear or favor or the suspicion of such attributes. The outstanding big factor in every lawsuit is the truth of the controversy. Judges, counsel, and rules of procedure are secondary factors designed by the law as instrumentalities to work out and arrive at the truth of the controversy.
The judiciary cannot be too circumspect, neither should it be reluctant to retire from a cause under circumstances that would shake the confidence of litigants in a fair and impartial adjudication of the issues raised.
Dickenson v. Parks, 104 Fla. 577, 582-84, 140 So. 459, 462 (1932). Further, in State ex rel. Mickel v. Rowe, 100 Fla. 1382, 1385, 131 So. 331, 332 (1930), we stated:
"Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge." It is the duty of courts to scrupulously guard this right of the litigant and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit and place the judiciary in a compromising attitude which is bad for the administration of justice.
To most citizens of this state, $500 is a substantial contribution to any public official. I am unable to agree with the majority that this contribution is so inconsequential that it is unreasonable for a citizen to question the impartiality of the judge. The statements above, made by this Court almost sixty years ago, emphasize the need to ensure public confidence in the integrity of the judicial system. I find that these prior decisions mandate an express approval of the district court's holding that "a $500 contribution by opposing counsel would ... cause a reasonable person to fear a bias by the trial judge in favor of the opposing side." Breakstone v. MacKenzie, 561 So.2d 1164 (Fla. 3d DCA 1989).
I recognize that a practical political result of my view could be a reduction in lawyers' political contributions to judges before whom they wish to practice. Apparently, the basis for the majority view is that (1) more judges are now involved in competitive elections; (2) much more money is now necessary to run a judicial election campaign; and (3) some lawyers have discovered that judicial contributions, together with our disqualification rule, can be used as a means to "judge-shop." I am not convinced that these circumstances, fully articulated by Justice Kogan in his specially *1343 concurring opinion, will occur to the extent contemplated by him and the majority. I would adhere to the principles espoused by this Court for nearly sixty years, during which time judges have always been elected. While I personally believe that merit retention is a much better way for a judge to maintain judicial tenure,[7] judges have survived the election process without our straining the construction of the phrase "in which his impartiality might reasonably be questioned" to allow a blanket exception to the Code of Judicial Conduct for political contributions up to $1,000.
If there is a need to address the problems articulated by Justice Kogan, we should do so directly by narrowly modifying the present code and adding some explanatory commentary, rather than by adopting an illogical construction of the present code provision. This construction labels a litigant as unreasonable under circumstances where most citizens would conclude the litigant was reasonable in expressing concern that the judge would not be impartial.
I fully concur with that portion of the majority opinion that requires Judge MacKenzie to disqualify herself because of her statements after the motion for disqualification was filed, but I also find that she should have disqualified herself on the grounds stated in the initial motion.
NOTES
[1] We agree with the conclusion in the majority decision below that it makes no difference that the campaign contribution at issue was made to the campaign of the judge's spouse, rather than to the judge's own campaign. If a campaign contribution to the judge would be legally sufficient to require disqualification on motion, it stands to reason that the same result would be warranted when the act was directed towards a member of the judge's household.
[2] The commentary to Canon 7 provides that "[a]ctive opposition is difficult to define but is intended to include any form of organized public opposition or an unfavorable vote on a bar poll."
[3] As the United States Supreme Court recognized in Buckley v. Valeo, 424 U.S. 1, 28, 96 S.Ct. 612, 639, 46 L.Ed.2d 659 (1976),

"[W]hile disclosure requirements serve ... many salutary purposes ..., Congress was surely entitled to conclude that disclosure was only a partial measure, and that contribution ceilings were a necessary legislative concomitant to deal with the reality or appearance of corruption inherent in a system permitting unlimited financial contributions, even when the identities of the contributors and the amounts of their contributions are fully disclosed."
[4] There may very well come a point where a political contribution is substantial enough that it would create a well-founded fear of bias or prejudice. We need not decide where that point is, however, for the legislature has declared that a contribution of $1,000 or less to a candidate for circuit or county judge, $2,000 or less for a judge of a district court of appeal, and $3,000 or less to a justice of the supreme court are the permissible limits for contributions. These caps establish reasonable limits which are not so high as to create a fear of undue influence. The higher contribution limits for judges of the district courts of appeal and justices of the supreme court reflect recognition of the fact that these judicial officers have larger constituencies.
[5] Although a motion for disqualification based solely upon a legal campaign contribution is not legally sufficient, it may well be that such a contribution, in conjunction with some additional factor, would constitute legally sufficient grounds for disqualification upon motion. In the situation at issue in Caleffe v. Vitale, 488 So.2d 627 (Fla. 4th DCA 1986), for example, the attorney representing the ex-wife in a postdissolution proceeding was the co-chair of the trial judge's judicial election campaign which was ongoing at the time of the underlying lawsuit. As the district court noted, "the fact that attorneys are generally encouraged to support candidates for judicial office and do so, has little to do with the propriety of an attorney practicing in a particular case before a judge with whom he or she has a specific and substantial political relationship." Id. at 629 (emphasis added).

Another example may be found in the situation presented in McDermott v. Grossman, 429 So.2d 393 (Fla. 3d DCA 1983). As stated by the district court:
Where a lawyer voices his opposition to the election of a judge, it is assumed that the judge will not thereafter harbor prejudice against the lawyer affecting the judge's ability to be impartial in cases in which the lawyer is involved. But where, as here, the petitioners' motion to disqualify (the truth of which must be accepted) alleges that the respondent, having learned that the petitioners' lawyer had opposed the judge's selection to other judicial positions, delivered to the lawyer a "tirade" about his nonsupport of her, then an assumption of nonprejudice can no longer be made.
429 So.2d at 393-94 (citations omitted; footnote omitted).
[6] Judge MacKenzie's contention in her brief that the statements did not constitute a denial of the central factual allegation in the motion, that counsel for plaintiff had contributed to the election campaign, is without merit. The affidavit of Arthur Breakstone filed with the motion for disqualification states:

2... . [H]e fears he will not receive a fair trial before Judge MacKenzie on account of the prejudice of the judge against him and in favor of plaintiff.
3. The facts and reasons for his belief that such bias and prejudice exists are as follows:
.....
g. On September 7, 1988, he reviewed a certified copy of the 1988 campaign contribution reports filed by Don MacKenzie, circuit court judicial candidate, showing that on August 10, 1988, Danile Mones, plaintiff's attorney, contributed $500.00 to Don MacKenzie's campaign.
.....
4. The above lead him to fear that Judge MacKenzie knows of Mr. Mones' significant campaign contribution to her husband ... and that he will not get a fair and impartial trial.
.....
The statements of the trial judge clearly attempt to refute the factual allegations made.
[7] See Overton, Trial Judges and Political Elections: A Time for Re-Examination, 2 U.Fla.J.L. & Pub.Pol'y 9 (1988-89).