## IN THE INTEREST OF: J. I., a child, et al.
### Case No. CJ-91-909-JK
Fifteenth Judicial Circuit, Palm Beach County
May 19, 1991

## OPINION OF THE COURT

DANIEL T. K. HURLEY, Circuit Judge.

### *ORDER DENYING DEFENDANTS' MOTION FOR DISQUALIFICATION*

THIS CAUSE is before the Court upon the defendants' motion for disqualification pursuant to rule 8.320, Fla.R.Juv.P. (In the interest of avoiding duplicative pleadings in nine cases which are joined for trial, the Court adopted a procedural rule allowing one motion to apply to all unless a defendant expressly opted out. Some defendants, as re-

flected in the record of the May 17th hearing, have declined to join the present motion.)

Defendants' motion was presented to the Court shortly before the commencement of the alleged victim's deposition over which the Court had agreed to preside. *See* Rule 3.220(h)(4), Fla.R.Crim.P. The Court acknowledged its responsibility to rule on the motion for disqualification before proceeding with the deposition. However, since the case involves allegations of sexual battery against a minor by multiple juvenile perpetrators, and because the deposition had been cancelled once before, the Court sought a stipulation from counsel to go forward with the victim's deposition, which is not a judicial proceeding. *See Palm Beach Newspapers, Inc. v Burk,* 504 So.2d 378 (Fla.), *cert. denied,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). Defense counsel declined. Thereupon the Court dictated its ruling into the record and announced its intention to file a written order.

Rule 8.320, Fla.R.Juv.P., sets forth the procedural requirements for a motion for disqualification. Subsection (b) states:

> Every motion to disqualify shall be in writing and be accompanied by two or more affidavits setting forth facts relied upon to show the grounds of disqualification, and a certificate of counsel of record that the motion is made in good faith.

The motion in the case at bar is in writing and is accompanied by five supporting affidavits which set forth facts "in a positive, and not a qualified manner." *Hahn v Frederick,* 66 So.2d 823, 825 (Fla. 1953). Furthermore, the motion contains a statement by counsel of record that the motion is made in good faith. Accordingly, the Court concludes that the procedural requirements of rule 8.320 have been satisfied. *See Caleffe v Vitale,* 488 So.2d 627 (Fla. 4th DCA 1986).

The Court is aware of the limited function it must perform when reviewing a motion for disqualification. "[T]he judgment with respect to whom the motion is made may only determine whether the motion is legally sufficient and is not allowed to pass on the truth of the allegations." *Livingston v State,* 442 So.2d 1083, 1086 (Fla. 1986); *see also* Rule 8.320(d), Fla.R.Juv.P. Indeed, it is reversible error for the trial court to attempt to refute the allegations of the motion. *See Lake v Edwards,* 501 So.2d 759 (Fla. 5th DCA 1987).

Subsection (b) of rule 8.320, Fla.R.Juv.P., indicates that the supporting affidavits shall set forth the "facts relied upon to show the grounds of disqualification. . ." Subsection (d), in turn, directs the judge to "examine the motion and supporting affidavits . . . to determine their legal sufficiency. . ." In the case at bar, defendants' motion contains

**207**

more facts than are set forth in the five supporting affidavits. Inasmuch as the motion's additional facts are supplemental to, and not contradictive of, the facts in the supporting affidavits, the Court has reviewed the totality of the documents and has accepted all *factual* allegations as true. (An audio as well as a video tape of the Commission's May 14th workshop has been filed in the court file.) Among the factual allegations set forth in the supporting affidavits are the following:

[This] case involve[s] nine (9) court appointed lawyers, Aff. of Henry J. Meyers, Esq.

On . . . May 7, 1991, [Defense attorney Meyer] was contacted by Judge Hurley's office and placed on a conference call concerning the failure of Dr. Lamatis to appear for deposition. At the hearing [Mr. Meyer] agreed and authorized Judge Hurley to contact the doctor and arrange for his deposition to be taken.

On May 8, 1991, the court entered an order resetting deposition wherein the court said in pertinent part, "The court will determine at a later date whether the difficulty in taking the doctor's deposition on Monday, May 6, 1991, was attributable to counsel's failure to consult with the witness and agree on a mutually-acceptable time and, if so, whether costs should be assessed against counsel. Aff. of Henry J. Meyer, Esq.

On May 14, 1991, the Board of County Commissioners conducted a workshop to discuss and decide upon a proposal entitled, 'Cost Containment/Court-Appointed Attorneys.' Aff. of Ann H. Perry, Esq.

Judge Hurley was one of several spokesmen who presented argument in favor of the proposed cost containment plan. Aff. of Ann H. Perry, Esq.

During the course of Judge Hurley's rebuttal presentation, . . . Judge Hurley [made] reference to the situation involving the above-styled case wherein a certain doctor was subpoenaed for deposition, and failed to appear. Judge Hurley very clearly made reference to the case indicating that the case involved nine (9) court appointed lawyers and produced what appeared to be a transcript of a conversation between the doctor in question and the Judge. Judge Hurley, after acknowledging that there may be a dispute with the accuracy of the representation of the doctor, proceeded to inform the Commission and the public at large of a select portion of the conversation wherein the doctor was supposedly told by one of the court appointed attorneys that 'I don't care whether you show up for

deposition or not; it's no skin off my nose; I get paid by the hour.' Aff. of Henry J. Meyer, Esq.

The Judge went on to explain to the Commission that he was very concerned about that sort of attitude on behalf of court appointed lawyers. Aff. of Henry J. Meyer, Esq.

"When a defendant files a motion for disqualification of a judge, that judge may only determine the legal sufficiency of the motion." *Taylor v State,* 557 So.2d 138 (Fla. 1st DCA 1990). In determining the motion's legal sufficiency, all of the facts alleged by the moving party must be taken as true. *See Deren v Williams,* 521 So.2d 150 (Fla. 5th DCA), *review denied,* 532 So.2d 169 (Fla. 1988). "The test for [legal] sufficiency of a motion for disqualification of a judge for prejudice in a criminal proceeding is whether the motion demonstrates a well-grounded fear on the part of the defendant that he will not receive a fair trial at the hands of the judge. The facts and reasons given must tend to show personal bias or prejudice." *Lewis v State,* 530 So.2d 449, 450 (Fla. 1st DCA 1988); *see also MacKenzie v Super Kids Bargain Store, Inc.,* 565 So.2d 1332 (Fla. 1990). Thus, the sole question before the Court is whether the above facts, taken as true, create a well-founded fear in the defendant's minds that they cannot receive a fair trial.

Rule 8.320, Fla.R.Juv.P., was crafted to protect the *party's* right to a fair trial. Subsection (a) indicates that the *party* is the person who may move to disqualify the judge. Similarly, case law holds "that the asserted facts must be 'reasonably sufficient' to create a 'well founded fear' in the mind of a *party* that he or she will not receive a fair trial." *Fischer v Knuck,* 497 So.2d 240, 242 (Fla. 1986) (emphasis supplied). Courts and commentators have uniformly distinguished between allegations of judicial bias against a party as opposed to the party's lawyer. "Antipathy towards a lawyer will not necessarily be considered by the courts as extending to the lawyer's client, and where the antipathy is against the lawyer but not against the client personally, recusal will not be required." *See* J. Shaman, S. Lubet & J. Alfini, *Judicial Conduct And Ethics,* Section 5.08, at 111 (1990). The Florida Supreme Court has held that "prejudice" in the context of a disqualification motion "refers to prejudice to the client and not his lawyer." *State ex rel. Fuentes v Himes,* 36 So.2d 433, 438 (Fla. 1948). Only where the prejudice against the lawyer "is of such degree that it adversely affects the client," *Ginzberg v Holt,* 86 So.2d 650, 651 (Fla. 1956), will the judge be required to disqualify himself.

The common element in all prejudice-against-lawyer cases is an

intense personal antipathy between the trial judge and counsel, usually stemming from a source unconnected with the trial, which is so extreme that the law presumes it will flow over and adversely affect the client's right to a fair trial. A classic example of such hostility is found in *Livingston v State, supra,* where defense counsel obtained the judge's disqualification by detailing a twenty-five-year feud replete with election defeats, "angry words," "numerous crossings," and a judge-initiated grand jury investigation of counsel. A second example is provided by *Hayslip v Douglas,* 400 So.2d 553 (Fla. 4th DCA 1981). There it was alleged that the trial judge and defense attorney had a long-standing disagreement. On one occasion the judge accused the defense attorney of filing a frivolous and champertous motion. Animosity erupted again in Dr. Hayslip's trial when the judge, while ruling on an attorney's motion to withdraw, pointed to Dr. Hayslip's attorney and said, "There is another lawyer whose name I would like to add to this motion to withdraw. He should not be in this case." *Id.* at 555. Commentators have observed that "[w]hile in all probability this case goes further than most in requiring recusal on the basis of judicial animosity toward an attorney, it well illustrates the principle that a judge will be disqualified where he or she shows hostility to a lawyer that is of such a degree that it adversely affects the judge's state of mind toward the lawyer's client." J. Shaman, S. Lubet and J. Alfini, *Judicial Conduct And Ethics, supra,* at 112.

The threshold question in the case at bar is whether the factual allegations concerning the judge's remarks before the Board of County Commissioners demonstrate personal bias or prejudice and, if so, whether they reflect the degree of personal hostility which the law presumes will flow over and adversely affect the client's rights. As alleged, the Board of County Commissioners for Palm Beach County is considering altering the method for compensating court-appointed counsel. One recommendation favors the adoption of a contract formula utilizing a flat fee. Presently, court-appointed counsel is compensated at an hourly rate. The trial judge in this case, pursuant to his responsibilities under rule 2.050, Fla.R.Jud.Admin., and canons 3(B)(1) and 4(B) of the Code of Judicial Conduct, testified at the hearing. During his remarks, the judge made

> reference to the situation involving [this] case wherein a certain doctor was subpoenaed for deposition and failed to appear. Judge Hurley very clearly made reference to the case indicating that the case involved nine (9) court appointed lawyers and produced what appeared to be a transcript of a conversation between the doctor in question and the Judge. Judge Hurley, after acknowledging that

there may be a dispute with the accuracy of the representation of the doctor, proceeded to inform the Commission and the public at large of a select portion of the conversation wherein the doctor was supposedly told by one of the court appointed attorneys that 'I don't care whether you show up for your deposition or not; it's no skin off my nose; I get paid by the hour.' The judge went on to explain to the Commission that he was very concerned about that sort of attitude on behalf of court appointed attorneys. Affidavit of Henry J. Meyer, Esq.

The remarks attributed to the judge evidence his concern with the overall operation of the hourly-rate compensation system. They also indicate his displeasure with defense counsel because of the manner in which they handled a pretrial discovery deposition. The supporting affidavit of Henry J. Meyer, Esq., indicates that the May 14th commission hearing was not the first time that counsel were put on notice of the Court's concern. Mr. Meyer avers that [o]n May 8, 1991, [the day after the judge talked to the doctor], the court entered an order resetting deposition wherein the court said in pertinent part, "The Court will determine at a later date whether the difficulty in taking the doctor's deposition on Monday, May 6, 1991, was attributable to counsel's failure to consult with the witness and agree on a mutually-acceptable time and, if so, whether costs should be assessed against counsel."

It is clear from the foregoing that the Court does not possess a personal bias or prejudice against defense counsel. Nothing in the record suggests personal antipathy or hostility. What is reflected—and what is appropriate for any judge overseeing the expenditure of public funds—is the Court's dismay with defense counsel's handling of a doctor's pretrial discovery deposition. Counsel's failure to consult with the doctor before scheduling the deposition violated generally-accepted practices of courtesy and accommodation and resulted in a waste of public monies.

It is significant that the Court learned of this problem during the performance of its judicial duties. "To be disqualifying, the alleged bias or prejudice must stem from an extrajudicial source." *United States v Serrano,* 607 F.2d 1145, 1150 (5th Cir. 1979), *cert. denied,* 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980). "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

The factual allegations positively indicate that every lawyer authorized the judge to have an *ex parte* conversation with the doctor. Moreover, it was well within the permitted ambit for the doctor to explain why he failed to attend the scheduled deposition on May 6th, 1991, and what was said to him following his nonattendance. Having agreed to this procedure, defense counsel are estopped from complaining about its *ex parte* nature. Moreover, it is legally irrelevant that the court followed standard practice, *see, e.g., Jones v Bowman,* 479 So.2d 772 (Fla. 4th DCA 1985) (Glickstein, J., concurring), and had a court reporter present to record the conversation. (A partial transcript of the conversation has been filed in the court file.)

Finally, even if it is assumed that the judge's comments do reflect personal bias or prejudice against counsel, they do not evidence the degree of personal hostility which would flow over and adversely affect a client's right to a fair trial. "[H]ostility toward a party's attorney must be both personal and extreme before it is disqualifying." J. Shaman, S. Lubet, J. Alfini, *Judicial Conduct And Ethics, supra,* at 111.

Next is the question whether the judge's action of quoting the doctor's statement that one of the court-appointed attorneys said to him, "I don't care whether you show up for deposition or not; it's no skin off my nose; I get paid by the hour," Affidavit of Henry J. Meyer, Esq., is reasonably sufficient to create a well founded fear in the defendant's mind that he will not receive a fair trial. Put another way, the question is whether the judge, by quoting the doctor and impliedly finding him credible on this topic, created a well-founded fear that the judge is predisposed to accept the doctor's testimony on the merits. It should be noted at the outset that the judge expressed a reservation about the doctor's statement. "Judge Hurley . . . acknowledge[ed] that there may be a dispute with the accuracy of the representation of the doctor. . ." Aff. of Henry J. Meyer, Esq.

"A determination must be made as to whether *the facts alleged* would place a *reasonably prudent person* in fear of not receiving a fair and impartial trial." *Livingston v State, supra,* at 1087 (emphasis supplied); *see also People Against Tax Revenue Mismanagement, Inc. v Reynolds,* 571 So.2d 493 (Fla. 1st DCA 1990). Not all fears require disqualification. Florida law differentiates between "well-founded fears" and "subjective fears." The former require disqualification; the latter do not. Whether a fear is well-founded or subjective turns on a case-by-case analysis of the facts set forth in the supporting affidavits. *See e.g., Teller v Teller,* 571 So.2d 539 (Fla. 4th DCA 1990); *Kowalski v Boyles,* 557 So.2d 885 (Fla. 5th DCA 1990).

The notion that the trial judge is predisposed to believe the doctor's trial testimony on the merits simply because the judge believed the doctor's recounting of a brief telephone conversation that was had with one of the defense attorneys does not comport with logic or common sense. According to the supporting affidavit of Henry J. Meyer, Esq., the doctor claimed an attorney said, "I don't care whether you show up for the deposition or not; it's no skin off my nose; I get paid by the hour." Nothing in this conversation relates to the doctor's anticipated testimony on the merits. No mention was made of the doctor's background, training or the treatment that was rendered to the alleged victim. All that was discussed in this fleeting telephone encounter was the doctor's nonattendance at a discovery deposition together with the attorney's reported reaction. Whether the doctor's recollection is accurate in every detail is irrelevant to the issue of the defendants' guilt or innocence.

The fear that a court may use a witness' statement on a peripheral matter to determine the witness' credibility on the merits of the case is not well-founded; it is a subjective fear. "We cannot operate a judicial system, or indeed a society, on the basis of the factually unsubstantiated perceptions of the cynical and distrustful." *Breakstone v MacKenzie,* 561 So.2d 1164, 1178 (Fla. 3d DCA 1989) (Schwartz, C.J., dissenting), *rev'd sub nom. MacKenzie v Super Kids Bargain Store, Inc.,* 565 So.2d 1332 (Fla. 1990). No presumption is indulged more regularly than that which holds that judges are presumed to know and follow the law. It is this rubric which permits judges, who have suppressed incriminating evidence or heard other prejudicial information, to continue presiding at trial. It is neither logical nor reasonably prudent to conclude that the Court, as the trier of the fact, will abandon its responsibility to assess the credibility of witnesses. Nothing in the factual allegations suggests that the Court will not follow the general instruction on the credibility of expert witnesses and "consider each expert opinion received in evidence and give it the weight . . . it deserves, and . . . reject it entirely if [the Court] finds that the alleged facts upon which it is based have not been proved or that the reasons given in support of the opinion are not sound." *Florida Standard Jury Instruction in Criminal Cases,* 2.13(c) (1975).

In denying the defendants' motion for disqualification, the Court does not mean to suggest that the reference to this case before the Board of County Commissioners was proper. Upon reflection, the Court has concluded that its reference to a pending case, albeit to a peripheral aspect of a pending case, was violative of canon 3(A)(6) of the Code of Judicial Conduct. The Court is embarrassed by its error

and expresses its apology to counsel. Admittedly under these circumstances there is a temptation to enter a bland order of recusal and turn the matter over to another judge. However, as has been noted on several occasions, ten children are caught up in this case. Thus far four judges have been involved; one disqualified by the State and two disqualified on their own motion. There is an urgent need to move forward and resolve the matters presented. Thus the Court has attempted to evaluate the motion as required by law. In the same sense that not all errors require reversal, not all violations of the code require disqualification. "Comments or remarks made out-of-court but in regard to court proceedings, like in-court statements, are not indicative of improper bias unless they are so extreme that they show a judge has become close-minded about a pending case." Shaman, *Bias on the Bench: Judicial Conflict of Interest,* 3 Geo. J. Legal Ethics 245, 155 (2989).

Accordingly, it is

ORDERED and ADJUDGED that the defendants' motion for disqualification is denied.

DONE and SIGNED in Chambers at West Palm Beach, Florida, this 19th day of May, 1991, *nunc pro tunc* to May 17th, 1991.