# Third District Court of Appeal

## State of Florida

Opinion filed August 10, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-0716
Lower Tribunal No. 21-16860
_____


**Claudio Cini, et al.,**
Petitioners,

vs.

**Angela Cabezas, et al.,**
Respondents.


A Case of Original Jurisdiction—Prohibition.

The Bobadilla Law Firm, and D. Fernando Bobadilla, for petitioners.

Bushell Law, P.A., and Daniel A. Bushell (Fort Lauderdale); Barakat + Bossa, PLLC, and Joshua E. Rasco, for respondents.


Before EMAS, MILLER, and BOKOR, JJ.

MILLER, J.

The issue presented in this petition for writ of prohibition is whether the allegation that the opposing counsel's law firm co-hosted a judicial fundraiser for the judge during a contested, ongoing re-election campaign, coupled with proof of adverse rulings, is legally sufficient to warrant disqualification. For the reasons that follow, we conclude it is not and deny the petition.

## LEGAL ANALYSIS

"[A] writ of prohibition is the proper procedure for appellate review to test the validity of a motion to disqualify." JJN FLB, LLC v. CFLB P'ship, LLC, 283 So. 3d 922, 925 (Fla. 3d DCA 2019) (alteration in original) (quoting Pilkington v. Pilkington, 182 So. 3d 776, 778 (Fla. 5th DCA 2015)). We review a trial court order denying judicial disqualification de novo. Wade v. Wade, 123 So. 3d 697, 697 (Fla. 3d DCA 2013).

"The standard for viewing the legal sufficiency of a motion to disqualify is whether the facts alleged, which must be assumed to be true, would cause the movant to have a well-founded fear that he or she will not receive a fair trial at the hands of that judge." Wall v. State, 238 So. 3d 127, 143 (Fla. 2018) (quoting Parker v. State, 3 So. 3d 974, 982 (Fla. 2009)). In this vein, a motion for disqualification must contain "'an actual factual foundation for the alleged fear of prejudice[,]' and . . . such allegations must be 'reasonably sufficient to justify a well-founded fear of prejudice.'" Sands Pointe Ocean

2

Beach Resort Condo. Ass'n, Inc. v. Aelion, 251 So. 3d 950, 960 (Fla. 3d DCA 2018) (quoting Fischer v. Knuck, 497 So. 2d 240, 242 (Fla. 1986)).  "Because this is an objective test viewed from the perspective of a reasonably prudent person armed with the information known to the moving party, subjective fears of the moving party are insufficient to require disqualification."  Michael Ufferman, Florida Criminal Practice & Procedure § 17:1 (2022 ed.).

During election season, courts are confronted with the recurring issue of whether involvement by an attorney in a judicial re-election or retention campaign creates a conflict of interest warranting judicial disqualification.  "[S]o long as a state chooses to select its judges by popular election, it must condone to some extent the collection and expenditure of money for campaigns."  Stretton v. Disciplinary Bd. of Sup. Ct. of Pa., 944 F.2d 137, 144 (3d Cir. 1991).  It is not uncommon for attorneys to contribute financially to judicial campaigns, and a contribution within the statutory limitations, in and of itself, does not create an appearance of impropriety or a disqualifying conflict.

In the seminal case of MacKenzie v. Super Kids Bargain Store, Inc., 565 So. 2d 1332, 1333 (Fla. 1990), the Florida Supreme Court considered whether disqualification was required where an attorney appearing before the judge made a $500 contribution to the political campaign of the judge's

3

husband.  Observing "the interplay of our state constitution, code of judicial conduct, and campaign statutes," the court answered the question in the negative.  Id. at 1335.  In reaching its conclusion, the court noted that "the citizens of Florida have chosen to retain the power to elect county and circuit judges," and "[a]s with other campaigns, judicial campaigns require funds."  Id.  Florida's Code of Judicial Conduct, however, effectively insulates judges from solicitation activities.  Additionally, Florida's statutory limitation on campaign contributions, along with the required disclosure of the names of campaign contributors and contribution amounts, promotes transparency and reduces the appearance of impropriety.  See id. at 1336; Buckley v. Valeo, 424 U.S. 1, 23–25 (1976).  These factors render a permissible contribution to a judicial campaign insufficient to warrant disqualification.  MacKenzie, 565 So. 2d at 1336.

MacKenzie and its progeny focus on "[t]he timing, nature, and extent of participation in a judge's campaign."  Rivera v. Bosque, 188 So. 3d 889, 890 (Fla. 5th DCA 2016).  Adopting this approach, this court and others have determined that, ordinarily, limited involvement in a judicial re-election campaign does not constitute grounds for disqualification.  See Zaias v. Kaye, 643 So. 2d 687, 687 (Fla. 3d DCA 1994) (holding counsel's campaign contribution of unspecified amount and service as one of sixty committee

4

members on judge's concluded campaign did not require disqualification); Oak Cas. Ins. Co. v. Travelers Ins. Co., 750 So. 2d 704, 705 (Fla. 3d DCA 2000) (holding disqualification unnecessary where opposing counsel was a member of the District Court of Appeal Nominating Commission from which trial judge unsuccessfully sought nomination in the past and may allegedly seek nomination in the future); Braynen v. State, 895 So. 2d 1169, 1169 (Fla. 4th DCA 2005) (holding disqualification was not required where petitioner's counsel was on thirty-four-member steering committee supporting trial judge's opponent in concluded election); E.I. DuPont de Nemours & Co. v. Aquamar S.A., 24 So. 3d 585, 585 (Fla. 4th DCA 2009) (finding combined contribution of $4,650 from attorneys in firm representing plaintiff was within statutorily permitted amount and insufficient for disqualification); Nathanson v. Korvick, 577 So. 2d 943, 944 (Fla. 1991) (affirming disqualification was not required where opposing counsel had both contributed to and served on committee for trial judge's previously concluded campaign). More extensive involvement, however, in a contested, ongoing, or recent re-election campaign may constitute legally sufficient grounds for disqualification. See Neiman-Marcus Grp., Inc. v. Robinson, 829 So. 2d 967, 968 (Fla. 4th DCA 2002) (holding disqualification was required where opposing counsel was campaign treasurer for trial judge, and campaign had concluded only days

5

earlier); Barber v. MacKenzie, 562 So. 2d 755, 757–58 (Fla. 3d DCA 1990) (mandating disqualification where trial judge had drawn announced opposition and wife's lawyers were members of judge's active, ongoing, re-election campaign committee, which conducted direct mail solicitation that requested contributions and endorsements); Caleffe v. Vitale, 488 So. 2d 627, 627 (Fla. 4th DCA 1986) (holding husband's motion for disqualification should have been granted where wife's lawyer co-chaired judge's ongoing campaign for re-election).

This distinction may be nuanced, but it is critical because "[i]n Florida, . . . 'leading members of the state bar play important and active roles in guiding the public's selection of qualified jurists.'" MacKenzie, 565 So. 2d at 1337 (quoting Ainsworth v. Combined Ins. Co. of Am., 774 P.2d 1003, 1020 (Nev. 1989)). Not surprisingly, "lawyers, along with litigants, are the 'primary' contributors to judicial elections." Keith Swisher, Legal Ethics and Campaign Contributions: The Professional Responsibility to Pay for Justice, 24 Geo. J. Legal Ethics 225, 241 n.66 (2011) (quoting Erwin Chemerinsky, Preserving an Independent Judiciary: The Need for Contribution and Expenditure Limits in Judicial Elections, 74 Chi.-Kent L. Rev. 133, 133 (1998)). Consequently, "it would be highly anomalous" to allow a lawyer's nominal participation in a re-election effort to "create a disqualifying interest, an appearance of

6

impropriety or a violation of due process sufficient to require the justice's recusal from all cases in which that attorney might be involved." MacKenzie, 565 So. 2d at 1337–38 (quoting Ainsworth, 774 P.2d at 1020).

Turning to the instant case, petitioners cited adverse rulings and scheduling difficulties and alleged that the law firm "was the first listed firm [of sixteen] that hosted a [single] re-election fundraising event for the [j]udge."[1] The event purportedly occurred several months before the adverse rulings were issued and the scheduling difficulties arose. There were no individualized allegations regarding respondents' attorney of record.

These allegations, without more, viewed against our precedent, compel the conclusion that the motion for disqualification was legally insufficient.[2] See Berger v. United States, 255 U.S. 22, 31 (1921) (quoting Ex parte Am. Steel Barrel Co., 230 U.S. 35, 44 (1913)) (observing

---

[1] While the refusal to accommodate a scheduling request is not a basis for disqualification, here, the request at issue involved a preplanned, out-of-state vacation. We remind the trial judge that "courts must be reasonable with scheduling and should consider the impact scheduling decisions have on the parties and their counsel." Fetzner v. State, 219 So. 3d 834, 837 (Fla. 4th DCA 2017).

[2] In addressing an inquiry as to "[w]hether a judge is disqualified in all cases in which an attorney who was a member of the judge's re-election committee appears as an attorney of record in a case," the Florida Supreme Court Judicial Ethics Advisory Committee has answered "no" but further opined "there is no bright-line test," and a judge "must make his or her decision on disclosure or disqualification on a case-by-case basis." JEAC 2003-22.

7

disqualification laws were never intended "to enable a discontented litigant to oust a judge because of adverse rulings made"); <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994) (noting most judicial rulings "cannot possibly show reliance upon an extrajudicial source . . . .  [Thus,] [a]lmost invariably, they are proper grounds for appeal, not for recusal").

Accordingly, we deny the petition for writ of prohibition.

Petition denied.