# Third District Court of Appeal

## State of Florida

Opinion filed June 6, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-755
Lower Tribunal No. 17-2393

_____

**Sands Pointe Ocean Beach Resort Condominium Association, Inc., etc.,**
Petitioner,

vs.

**Isaac Aelion, et al.,**
Respondents.

_____

No. 3D18-786
Lower Tribunal No. 17-12776

_____

**Elite Parking, LLC, etc., et al.,**
Petitioners,

vs.

**Susan Chapman,**
Respondent.

————————

No. 3D18-790
Lower Tribunal No. 18-630
————————

**Lauren Michelle Perez, et al.,**
Petitioners,

vs.

**Lisa Espineira,**
Respondent.

————————

No. 3D18-825
Lower Tribunal No. 15-20238
————————

**Homeowners Choice Property & Casualty Insurance Company, Inc.,**
Petitioner,

vs.

**Raul Avila and Doxanne Avila,**
Respondents.

————————

No. 3D18-826
Lower Tribunal No. 17-9595
————————

**Southern Oak Insurance Company,**

Petitioner,

vs.

**Kervene Gregory,**

Respondent.

————————————

No. 3D18-827
Lower Tribunal No. 16-17320

————————————

**Safepoint Insurance Company,**

Petitioner,

vs.

**Maxo Mardy and Marie G. Mardy,**

Respondents.

————————————

No. 3D18-828
Lower Tribunal No. 16-31754

————————————

**Cristela Investments, Inc.,**

Petitioner,

vs.

**Becky L. Moore and Jack Moore,**

Respondents.

_____

No. 3D18-833
Lower Tribunal No. 17-10806
_____


**Florida Capital Realty Luxury Inc., et al.,**
Petitioners,

vs.

**Charles Lacotera, et al.,**
Respondents.


_____


No. 3D18-834
Lower Tribunal No. 18-2576
_____


**Lakeview Gardens at Miami Lakes Condominium Association, Inc., etc.,**
Petitioner,

vs.

**KCC Investment Group, LLC, etc.,**
Respondent.


_____


No. 3D18-835
Lower Tribunal No. 17-3509
_____


**Charlyn Marshall,**

4

Petitioner,

vs.

**Luis E. Sanchez,**

Respondent.

_____

No. 3D18-836
Lower Tribunal No. 17-5970

_____

**Edison Insurance Company,**

Petitioner,

vs.

**Alberto Loo and Ana Bernitz-Loo,**

Respondents.

_____

No. 3D18-838
Lower Tribunal No. 17-23745

_____

**Randy Moses and Nohra Villaquiran,**

Petitioners,

vs.

**Charles Luke,**

Respondent.

_____

No. 3D18-853

5

Lower Tribunal No. 16-20727

_____

**The Belle Tower Condominium, Inc., et al.,**
Petitioners,

vs.

**Seema Mehta, et al.,**
Respondents.

_____

No. 3D18-854
Lower Tribunal No. 18-3930

_____

**2020 Ponce Condominium Association, Inc.,**
Petitioner,

vs.

**2020 Ponce LLC,**
Respondent.

_____

No. 3D18-855
Lower Tribunal No. 17-28537

_____

**Sayan Condominium Association, Inc.,**
Petitioner,

vs.

6

**Law Offices of Isaac Benmergui, P.A.,**
Respondent.

————————

No. 3D18-857
Lower Tribunal No. 16-28208

————————

**Hartford Insurance Company of the Midwest,**
Petitioner,

vs.

**Jaqueline Dutkin,**
Respondent.

————————

No. 3D18-860
Lower Tribunal No. 16-679

————————

**Safepoint Insurance Company,**
Petitioner,

vs.

**Quecline Pierre and Emille Pierre,**
Respondents.

————————

No. 3D18-865
Lower Tribunal No. 17-29555

————————

7

**The Association for Retarded Citizens, South Florida, Inc., etc.,**
Petitioner,

vs.

**Claudia Zacarias, etc.,**
Respondent.

_____

No. 3D18-866
Lower Tribunal No. 17-21342
_____


**Gloria Milagros Casquero, et al.,**
Petitioners,

vs.

**Kimberly Kallstrom,**
Respondent.

_____

No. 3D18-867
Lower Tribunal No. 15-24532
_____


**Safepoint Insurance Company,**
Petitioner,

vs.

**Madeline Jean,**
Respondent.

8

———————

No. 3D18-868
Lower Tribunal No. 17-15949
———————

**Homeowners Choice Property & Casualty Insurance Company,**
Petitioner,

vs.

**Rosa Dunbar,**
Respondent.

———————

No. 3D18-871
Lower Tribunal No. 16-14752
———————

**Safepoint Insurance Company,**
Petitioner,

vs.

**Eligio Castellanos and Isabel Siles,**
Respondents.

———————

No. 3D18-872
Lower Tribunal No. 15-27515
———————

**Precision Healthcare, Inc., etc.,**
Petitioner,

9

vs.

**Luis Escalera,**

Respondent.

_____

No. 3D18-873
Lower Tribunal No. 15-6352

_____

**State of Florida and Office of the State Attorney of Miami-Dade County,**

Petitioners,

vs.

**Anthony Schehtman,**

Respondent.

_____

No. 3D18-874
Lower Tribunal No. 17-7889

_____

**Cuba Sabor, Inc., etc.,**

Petitioner,

vs.

**Traclaire Moreira,**

Respondent.

_____

10

No. 3D18-876
Lower Tribunal No. 07-46876

_____

**Ford Motor Company, etc., et al.,**
Petitioners,

vs.

**Concepcion Gil,**
Respondent.

_____

No. 3D18-877
Lower Tribunal No. 15-6858

_____

**Michael Murray,**
Petitioner,

vs.

**Margarete Alves, etc., et al.,**
Respondents.

Cases of Original Jurisdiction – Prohibition.

Cole Scott & Kissane, P.A., and Scott A. Cole and Kathryn L. Ender, for petitioners.

Panter, Panter & Sampedro, P.A., and Brett A. Panter and David Sampedro; Joel S. Perwin; VM Diaz & Partners, LLC, and Victor M. Diaz, Jr., Ailyn Popowski and Justin L. DiBiasio; Goldberg & Rosen, P.A., and Judd G. Rosen; Perry & Neblett, P.A., and David Avellar Neblett; David B. Pakula (Pembroke

11

Pines); The Mineo Salcedo Law Firm, P.A., and John Salcedo (Davie); Mario Serralta; Neufeld Kleinberg & Pinkiert, P.A., and David A. Kleinberg; DeMahy Labrador Drake, et al., and Kenneth R. Drake and Tiya S. Rolle; Mase Tinelli Mebane & Briggs, P.A., and Curtis J. Mase and William R. Seitz; L.E. Burgess, P.A. and Laura E. Burgess; Florin Roebig, and Michael Lynn Walker (Palm Harbor); The Law Offices of Grey & Mourin, P.A., and Lourdes Rodriguez Brea; The Patino Law Firm, and Richard Patino and Nikolas Mario Salles; Waldman Barnett, P.L., and Glen H. Waldman, Eleanor T. Barnett and Jeffrey R. Lam; Phillips, Cantor & Shalek, P.A., and Gary S. Phillips (Hollywood); Lauren J. Luck; Strems Law Firm, and Cecile S. Mendizabal; Raul R. Lopez; Kelley Uustal, PLC, and Josiah Graham (Fort Lauderdale); McLuskey, McDonald & Hughes, P.A., and John E. Hughes, III; The Monfiston Firm, P.A., and Daniel L. Monfiston; The Cochran Firm, and Scott W. Leeds (Plantation); Rogers Towers, P.A., and P. Brandon Perkins (Fort Myers); Gaebe Mullen Antonelli & DiMatteo, and James S. Robertson and Elaine D. Walter; Evan Michael Feldman; Alan Goldfarb; Leeder Law, and Thomas H. Leeder (Plantation); Sivyer Barlow & Watson, P.A. and Melissa A. Giasi (Tampa), for respondents.

Before SALTER, EMAS and LINDSEY, JJ.

SALTER, J.

Defendants represented by a law firm (through various attorneys within that firm; collectively, the "Law Firm") in twenty-six cases (and a plaintiff in a twenty-seventh case, also represented by the Law Firm) pending in the civil division of the Miami-Dade Circuit Court, petition for writs of prohibition to prevent an incumbent judge (the "Incumbent Judge") from presiding over any further matters in those cases. The petitions are grounded on the undisputed fact that a member of the Law Firm (the "Attorney Candidate")—though an attorney who is not counsel of record for any of the petitioners—is the sole opponent of the Incumbent Judge in an upcoming judicial election.

12

We have consolidated the twenty-seven petitions because of the common underlying legal issues and similar records.[1] The petitions followed the denial of motions for disqualification by the Incumbent Judge. The respondents in the consolidated cases rely on responses filed in two of the cases, to which the petitioners have filed separate replies.

For the reasons detailed in this opinion, we deny all of the consolidated petitions based on the records before us. This opinion addresses: (1) our standard of review; (2) the legal sufficiency of the petitioner/party allegations; (3) applicable legal and ethical guidance; (4) the parties' legal arguments; and (5) the limitations of this opinion.

I.      Standard of Review

The facts alleged in the underlying motions to disqualify the Incumbent Judge must be assumed to be true. Wall v. State, 238 So. 3d 127, 143 (Fla. 2018). The legal sufficiency of a motion to disqualify is a question of law which we review de novo. Id. at 142. That review assesses the movant's compliance with a statute and a rule of judicial administration.

---

[1] In the first-filed (lowest numbered) case only, Sands Pointe Ocean Beach Resort Condo. Ass'n, Inc. v. Aelion, Case No. 3D18-755, the record before us includes a transcript of a non-evidentiary hearing before the Incumbent Judge on the motion to disqualify. In all twenty-seven of the consolidated cases, the motions to disqualify were denied as legally insufficient.

13

Section 38.10, Florida Statutes (2018), requires that the applicant for disqualification file "an affidavit stating fear that he or she will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against that applicant or in favor of the adverse party," and that "Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists and shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith." The procedural requirements for such a motion are further described in Florida Rule of Judicial Administration 2.330.

Rule 2.330(d)(1), as pertinent here, requires that a party moving for disqualification demonstrate a fear that the movant "will not receive a fair trial or hearing because of **specifically described** prejudice or bias of the judge[.]" (Emphasis provided).

Additionally, Canon 3E(1) of the Florida Code of Judicial Conduct states that a judge should disqualify himself or herself in a proceeding "in which the judge's impartiality might reasonably be questioned, including but not limited to instances where (a) the judge has a personal bias or prejudice concerning **a party or a party's lawyer**, or personal knowledge of disputed evidentiary facts concerning the proceeding." (Emphasis provided).

II.     The Parties' Allegations

14

In reviewing the motions for disqualification for specific facts and fears, we consider whether the allegations "would place a reasonably prudent person in fear of not receiving a fair and impartial trial." MacKenzie v. Super Kids Bargain Store, Inc., 565 So. 2d 1332, 1335 (Fla. 1990); Barber v. MacKenzie, 562 So. 2d 755, 757 (Fla. 3d DCA 1990). Any alleged bias or prejudice must be actual, not presumptive. See, e.g., Jackson v. State, 599 So. 2d 103, 107 (Fla.), cert. denied, 506 U.S. 1004 (1992).

In the cases before us, the verified motions for disqualification evidence a common template. The body of the motion recites that: a named member of the Law Firm is the Attorney Candidate running against the Incumbent Judge; the Incumbent Judge is presiding in the pending case; and this results in "inherent prejudice or bias" by the Incumbent Judge against **both** the movant represented by the Law Firm and the Law Firm itself.

The motions then address the legal authorities governing judicial disqualification, though none of these authorities address the particular facts at issue here. The verification signed by the Law Firm's client (the movant) declares that the signatory has "read the foregoing motion for disqualification," and "the facts alleged therein are true and correct to the best of my knowledge and belief." Finally, the signatory declares, "As set forth in the Motion, I fear that I will not

15

receive a fair trial or hearing because of the described prejudice or bias of [the Incumbent Judge]."

Notably, there is no allegation or evidence that the Attorney Candidate is counsel of record in any of the pending cases. There is no allegation that any member of the Law Firm is associated with the Attorney Candidate's campaign (as Chair or Treasurer, for example). There is no allegation whether the Law Firm approves or disapproves of the Attorney Candidate's campaign, or whether the Law Firm itself, as a professional association,[2] has any position formally supporting the Attorney Candidate's individual decision to run for the judicial position.

Nor does any movant describe any conduct or comment by the Incumbent Judge, whether in-court or out-of-court, alleged to evidence bias or prejudice against the party or the Law Firm in the particular case. In short, the motions allege in a conclusory way that the movants anticipate "inherent" prejudice or bias that will arise against the entire Law Firm of which the Attorney Candidate is a part.[3]

---

[2] The Law Firm's publicly-available website indicates that it has offices in ten locations outside Miami-Dade County (where the campaign and election will take place). https://www.csklegal.com/locations/ (site last checked May 15, 2018). The record contains no evidence of a firm-wide, or even Miami office-wide, endorsement of the Candidate Attorney. The petitioners in the twenty-seven pending circuit court cases are represented by at least twenty different attorneys from the Law Firm (but not by the Attorney Candidate).

III.    Applicable Law and Ethics Opinions

A.    Case Law; Imputation to Attorney Candidate's  Law Firm

This is a case of first impression in Florida insofar as the candidacy of the Attorney Candidate is sought to be imputed by the movants to all members of the Law Firm as a basis for disqualification of the Incumbent Judge.  If a client of the Attorney Candidate was a party in a pending case before the Incumbent Judge, the client's concern would be more obvious, as in Tower Group, Inc. v. Doral Enterprises Joint Ventures, 760 So. 2d 256, 256 (Fla. 3d DCA 2000) (order denying disqualification vacated where the attorney had opposed the presiding trial judge ("in an acrimonious judicial campaign," a characterization not discernible in the present case); case remanded with directions that the trial judge grant the motion for disqualification).  See also Leeder v. Espinosa, 833 So. 2d 776, 776 (Fla. 3d DCA 2002) (same trial judge and individual attorney/campaign opponent; reiterating the holding in Tower Group, Inc. that "the trial judge may may have had

---

[3]   The petitioners allege in their reply, however, that the Law Firm's clients have not sought disqualification of the Incumbent Judge in each and every case pending before that judge.  The Law Firm reports that clients in 38 such cases have filed motions to disqualify; if and when petitions for prohibition are filed here after rulings are made by the Incumbent Judge in additional cases, our consolidation order contemplates that the same panel will be assigned those petitions.  As the records and applicable authorities may differ in any such cases, we express no opinion regarding the disposition of petitions beyond those already consolidated in the caption of this opinion.

an obligation to *sua sponte* recuse herself from this cause pursuant to Canon 3(E)(1(a), Code of Judicial Conduct").

In a number of Florida cases, disqualification was addressed when a campaign committee member for a judge's campaign was an attorney representing a party in a case pending before that judge. The opposing party sought disqualification and, when the motion was denied, sought a writ of prohibition. In one such case, this Court denied the petition, holding that a campaign contribution to a judge or service on a judge's campaign committee does not, without more, require disqualification. See Nathanson v. Korvick, 577 So. 2d 943 (Fla. 1991); MacKenzie, 565 So. 2d at 1335. Instead, allegations in such a case must indicate a "specific and substantial political relationship" (campaign chair or treasurer, for example) between the attorney and judge to constitute legally sufficient grounds for disqualification. Zaias v. Kaye, 643 So. 2d 687 (Fla. 3d DCA 1994). See also Rivera v. Bosque, 188 So. 3d 889, 891 (Fla. 5th DCA 2016) (granting petition for prohibition; petitioner's motion, affidavit, and attachments included a reelection flyer and incumbent/presiding judge's reelection web page; specific allegations "describe the involvement of [respondent's counsel] in the judge's current, ongoing campaign to be of a significant nature").

In a similar case, a defendant's motion to disqualify a judge based on the allegation that defense counsel was on the steering committee to elect the judge's

18

opponent, without more, was deemed legally insufficient. Braynen v. State, 895 So. 2d 1169, 1169 (Fla. 4th DCA 2005).

### B. Case Law: Presumption of Judicial Impartiality

The law presumes "that a judge will remain impartial even where counsel of record has voiced opposition to the election . . . of a judge." City of Lakeland v. Vocelle, 656 So. 2d 612, 614 (Fla. 1st DCA 1995); Paul v. Nichols, 627 So. 2d 122, 123 (Fla. 5th DCA 1993). "[I]t is assumed that the judge will not thereafter harbor prejudice against the lawyer affecting the judge's ability to be impartial in cases in which the lawyer is involved." McDermott v. Grossman, 429 So. 2d 393, 393–94 (Fla. 3d DCA 1983); Raybon v. Burnette, 135 So. 2d 228 (Fla. 2d DCA 1961). See also Perrotto v. R.J. Reynolds Tobacco Co., 169 So. 3d 284, 286 (Fla. 4th DCA 2015) (citing McDermott for the assumption that a judge will not be biased against counsel because of counsel's opposition to judge's application for office, but finding the trial court's comments in court sufficient to "rebut any assumption of non-prejudice").

Applying the principle that a motion to disqualify will not be legally sufficient unless the movant overcomes the presumption of impartiality, the "inherent prejudice" alleged in the motions in the present cases is based on the movants' attorneys' mere association with the Attorney Candidate in a statewide law firm. No Florida appellate case has imputed the candidacy of a member of a

law firm to every member of that firm as a legally sufficient basis to rebut and overcome the presumption of impartiality (and requiring disqualification of the incumbent judicial opponent on that basis).

C.     Canons of Judicial Ethics and Judicial Ethics Advisory Opinions

In 1976, the precursor to Florida's Judicial Ethics Advisory Committee ("JEAC") was established by the Supreme Court of Florida in Petition of the Committee on Standards of Conduct for Judges, 327 So. 2d 5 (Fla. 1976). JEAC's current name was approved by the Supreme Court of Florida in 1997.

As the foundational opinion states:

> The Committee shall render advisory opinions to inquiring judges relating to the propriety of contemplated judicial and non-judicial conduct, but **all opinions shall be advisory in nature only**. No opinion shall bind the Judicial Qualifications Commission in any proceeding properly before that body. An opinion of the Committee may, however, in the discretion of the Commission, be considered as evidence of a good faith effort to comply with the Code of Judicial Conduct; provided that no opinion issued to one judge or justice shall be authority for the conduct, or evidence of good faith, of another judge or justice **unless the underlying facts are identical**.

Id., at 5-6 (emphasis provided).

JEAC's salutary work has produced a body of several hundred opinions in the intervening years. Several of these have addressed the topic of motions to disqualify an incumbent judge when an attorney announces an intention to run, or actually runs, against the incumbent judge. No JEAC opinion has addressed the

20

exact scenario presented here, however, in which clients represented by other lawyers in the same law firm as the opposition candidate seek disqualification of the incumbent judge for "inherent" bias or prejudice, without more.

JEAC opinion numbers 84-12 and 84-23 address the simple scenario considered above in various judicial opinions, one in which a party is actually represented by the individual attorney running against the presiding judge. Opinion number 84-12 advises that disqualification in that instance should be automatic. Opinion number 84-23 advises that such disqualification continues after the election, "perhaps two years," until the judge's impartiality cannot reasonably be questioned.

JEAC opinions number 89-3, 89-8, 99-2, 99-13, and 2003-22 address a judge's duty to disqualify himself or herself as to cases involving other members of an attorney's law firm when the judge and the attorney have a significant relationship requiring disqualification. These opinions address social relationships between a judge and an attorney, and relationships with attorneys **supporting** an inquiring incumbent judge's election campaign. They do not address the law firm of an attorney who is running against a presiding judge.

Opinion number 89-3 involved an attorney who hunted with a judge, contributed to the judge's son's interest in quail-raising as a hobby, and permitted the judge to use the attorney's cabin in North Carolina. The opinion advises that

21

disclosure of the relationship was required "whenever that attorney appears in a proceeding before [the judge]." In opinion number 89-8, the same judge inquired whether disclosure was also required "on the occasions when a member of [the attorney's] law firm appears before [the judge]." JEAC opined that "you should disqualify yourself in any proceeding involving the attorney's law firm in which your impartiality might reasonably be subject to doubt." The opinion does not suggest a per se rule of disqualification for all lawyers within the law firm based on the relationship between the inquiring judge and his hunting companion/host.

JEAC opinion 99-2 involves a male judge's single, social dinner with a female attorney in a large law firm. "The judge and the attorney went out on that one occasion and it did not develop into a personal relationship." Id. The attorney appeared before the judge on two occasions; the judge disclosed the prior dinner engagement and, at the request of the opposing counsel, recused himself. Relying on opinion 89-8, the Committee then expressed the opinion, "If the judge believes that a relationship with an attorney must be disclosed then that same disclosure should be made when any member of the attorney's law firm appears before the judge." The Committee advised the inquiring judge of the Florida Supreme Court's commentary to Canon 3E in In re Code of Judicial Conduct, 659 So. 2d 692 (Fla. 1995):

> A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the

question of disqualification, even if the judge believes there is no real basis for disqualification. *The fact that the judge conveys this information does not automatically require the judge to be disqualified upon a request by either party, but the issue should be resolved on a case-by-case basis."*

Opinion number 99-13 asks the question of imputation very directly: "Whether a judge who is currently represented by an attorney must recuse himself/herself whenever members of the attorney's firm appear before the judge on contested or uncontested matters, whether or not recusal is requested?" The Committee answered, "The judge must automatically recuse herself, even if the parties do not request recusal." The opinion again cites JEAC opinion 89-8 as support for the imputation.

JEAC opinion 2003-22 addresses "Whether a judge is disqualified in all cases in which an attorney who was a member of the judge's re-election committee appears as an attorney of record in a case." The Committee answered "no," but also opined that "there is no bright-line test," and a judge "must make his or her decision on disclosure or disqualification on a case-by-case basis." Based on the previously discussed JEAC opinions 89-8, 99-2, and 99-13, the opinion reiterated the proposition that "If a judge believes that a relationship with an attorney must be disclosed or if a judge believes he or she should disqualify himself or herself, then that same disclosure and/or disqualification applies when any member of the attorney's law firm appears before the judge."

23

Reiterations of this proposition are found in other JEAC opinions as well, including opinions 03-22, 04-01, and 2007-17.  In all of those opinions and the opinions previously discussed in this section, however, the inquiring judge was considering disclosure and disqualification as to an attorney in a significant social relationship with the judge or involved in significant campaign activities with or for the judge's election campaign.

Only in JEAC opinion 2011-08 does the Committee consider an election opponent's law partner's status as a basis for disqualification of the incumbent judge.  The issue presented in the opinion is "Whether a judge who intends to seek re-election is disqualified from presiding over a case in which the law partner and campaign treasurer of an attorney who has qualified to run against the judge is an attorney for one of the parties."  In answering "yes," the Committee considered critical facts that are not in the cases before us: the attorney candidate's law partner was the campaign treasurer for the candidate opposing the incumbent judge while representing a party in a case pending before that judge.  The opinion does not include any information regarding the size of the judicial opponent's law firm.

The Committee in opinion 2011-08 was divided as to whether the judge should disqualify "by automatic, blanket recusal, or via a case-by-case method."  But citing the JEAC opinions discussed above, 03-22, 04-01, and 07-17, the Committee reiterated the proposition that the ethical obligations regarding

disqualification arising out of an attorney's appearance in a case extends to a member of the attorney's law firm (in this case, the law partner who was a campaign treasurer of the judge's opponent). JEAC opinion 2011-08 does not propose a "per se" or automatic rule of disqualification as to members of a large law firm who are not a partner and campaign treasurer of the judge's opponent.

To summarize the JEAC opinions, we conclude that they establish a broad principle of imputation applicable to lawyers in a law firm in which a particular lawyer has established a substantial personal or campaign-related tie to an incumbent judge. We find much less authority in the opinions regarding the opposite side of the electoral campaign—the incumbent judge's obligations when members of the opposing candidate's firm (but not the individual opposing candidate) represent parties in cases pending before the judge.

IV. The Parties' Legal Arguments

A. Petitioners

The petitions and replies analyze the authorities cited above and raise additional arguments as well. In Town Centre of Islamorada, Inc. v. Overby, 592 So. 2d 774, 775 (Fla. 3d DCA 1992), an attorney announced an intention to sue the clerk and judges of the circuit. A trial judge in two pending cases in which the attorney represented a party stated in open court that "he did not consider a threat of a lawsuit to be friendly and that the [attorney's] remark might warrant

25

disciplinary measures by the Florida Bar." This Court found these remarks were legally sufficient to support the claims of fear of prejudice in the two cases. In a third case, however, this Court found a waiver of the right to file such a motion, as the attorney "accepted the case as local co-counsel with full knowledge that it was already assigned to [the trial judge who made the remarks]." Id. at 776.

The petitioners rely on this case to rebut an argument by the respondents that the Attorney Candidate created the alleged basis for disqualification, such that the Attorney Candidate's Law Firm should not be able to file and prosecute the motions. We find the case and argument, as variously advanced by both sides here, to be irrelevant, as there is no evidence that (a) the Attorney Candidate commenced her campaign as a basis for forum-shopping for the benefit of the Law Firm's clients, or (b) the Law Firm played any role in the Attorney Candidate's personal decision to seek election as a circuit judge.

In their replies, the petitioners argue that the Incumbent Judge committed an abuse of discretion in denying the motions for disqualification because respondents' counsel were permitted to make arguments about the Attorney Candidate's motives and the Law Firm's motives. The petitioners cite Bundy v. Rudd, 366 So. 2d 440, 442 (Fla. 1978), as authority that this basis alone constitutes grounds for disqualification. We disagree.

26

In Bundy, the respondent trial judge entered an order which not only denied disqualification but also "went on to explain, and in some respects controvert, the specific factual allegations contained in the motion." Id. at 441. The trial judge entered a further order denying a motion to reconsider the denial, "again with explanation." Id. In the present case, the Incumbent Judge did not speculate as to motives, provide an explanation, or pass on the truth of the facts alleged in the motion.

B.    Respondents

Respondents in the consolidated cases have filed two separate responses. The first-filed response, in our Case No. 3D18-755, principally supports denial of the motions for disqualification because they are based on "circumstances that were created entirely by the Petitioners." The respondent in our Case No. 3D18-786 has filed a separate response raising additional legal arguments focusing on the legal insufficiency of the motions to disqualify. The Incumbent Judge, as is the Judge's right,[4] has not filed a response in any of the cases.

We have already declined to adopt the argument that the petitioners' counsel created the alleged basis for disqualification, thereby waiving it or requiring disqualification of the Law Firm in the pending cases, rather than the Incumbent Judge. We focus instead on the requirement that motions for disqualification

_____

[4]  See Fla. R. App. P. 9.100(e)(3); the absence of a response by the Incumbent Judge "shall not be deemed to admit the allegations of the petition."

contain "an actual factual foundation for the alleged fear of prejudice" and that such allegations must be "'reasonably sufficient' to justify a 'well-founded fear' of prejudice." Fischer v. Knuck, 497 So. 2d 240, 242 (Fla. 1986).

Political, voting, and ideological differences among lawyers associated in a law firm are too obvious to require proof or some form of judicial notice. The motions for disqualification bear no indication that the Law Firm lawyers representing the petitioners in the underlying cases support the candidacy of the Attorney Candidate. Assumptions are not an "actual factual foundation." Simply stated, no "specific and substantial political relationship," Neiman-Marcus Group, Inc. v. Robinson, 829 So. 2d 967, 968 (Fla. 4th DCA 2002), appears in this record between any attorney from the Law Firm representing a petitioner and the Attorney Candidate.

The respondent/plaintiff in Case No. 3D18-786 has also relied upon cases denying disqualification based on a campaign contribution;[5] service as one of sixty members on a judge's campaign committee[6] or as one of a thirty-four member steering committee which had supported the opponent of the presiding judge in an election.[7] These decisions recognize that attorneys must be allowed to participate

---

[5] Nathanson v. Korvick, 577 So. 2d 943 (Fla. 1991).

[6] Zaias v. Kaye, 643 So. 2d 687 (Fla. 1994).

[7] Braynen v. State, 895 So. 2d 1169 (Fla. 4th DCA 2005).

28

in various ways in judicial election campaigns, already subject to extensive regulation, without projections of favoritism, bias, or recrimination by judges or by candidates prevailing in their elections and becoming judges.

The per se rule proposed by the petitioners, with its presumption of "inherent bias or prejudice," could disincline eligible attorneys in large firms to enter contested judicial elections against an incumbent. The effect on the candidate's firm's clients and cases could be extensive and adverse. Although "policy considerations" are not a requisite aspect of our disposition of these cases, the prospect for unintended consequences is a concern.

V.     Limitations

In denying the petitions presently before us, we consider it important to list some limitations:

1.     Our denial of the petitions is based on the existing records of the individual petition proceedings before us. The election campaign conduct of both the Attorney Candidate and the Incumbent Judge is governed by the Code of Judicial Conduct (see, e.g., Canon 7) and by Rule Regulating The Florida Bar 4-8.2:

**Rule 4-8.2. Judicial and legal officials**

**(a) Impugning Qualifications and Integrity of Judges or Other Officers.** A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, public legal officer, juror or

member of the venire, or candidate for election or appointment to judicial or legal office.

**(b) Candidates for Judicial Office; Code of Judicial Conduct Applies.** A lawyer who is a candidate for judicial office shall comply with the applicable provisions of Florida's Code of Judicial Conduct.[8]

Subsequent facts and actions are not within the scope of the present proceedings, as "prohibition may not be used for the sole purpose of establishing principles to govern future cases." English v. McCrary, 348 So. 2d 293, 297 (Fla. 1977).

2.    Although judicial disqualification decisions properly focus on the perspective of the moving party regarding a "fear of not receiving a fair and impartial trial," rather than the judge's own subjective perception of impartiality or bias, we recognize that many judges receiving a motion to disqualify under the scenario presented here might themselves find it appropriate to grant the motion. In that circumstance, an incumbent judge's own sense of propriety, fairness, and optics must be respected; the exercise of an individual judge's discretion to grant such a motion is appropriate.  In our evaluation of the Incumbent Judge's decision to deny the motions in these cases, we are not suggesting in any way that every judge should do so in a similar case.

_____

[8]  See also, § 104.271, Florida Statutes (2018), "False or malicious charges against, or false statements about, opposing candidates; penalty."

3. We observe, as several of the JEAC opinions have, that these are generally case-by-case analyses. For example, the circumstances of a two-attorney law firm with one attorney challenging an incumbent judge, and the other continuing to practice before that judge, might suggest a closer and more "significant relationship." This opinion should not be construed to apply to any circumstances beyond those presented in these consolidated cases.

VI. Conclusion

The verified motions, party affidavits, and petitions rely on an assumption of "inherent bias or prejudice" on the part of the Incumbent Judge against each of some twenty different lawyers in the Candidate Attorney's law firm, simply by virtue of their association in the practice of law with the Candidate Attorney. No other specific allegations of in-court or out-of-court conduct provide objective support for such an assumption. The presumption of impartiality has not been overcome in these cases, and the petitions in each case are denied, subject to the limitations expressed in this opinion.