# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 8, 2023

## IN RE CONSERVATORSHIP OF DAVID WILLIAM MILEM

**Appeal from the Probate Court for Shelby County**
**No. PR-015356      Kathleen N. Gomes, Judge**

_____

### No. W2023-01743-COA-T10B-CV

_____

This is an interlocutory appeal as of right, pursuant to Tennessee Supreme Court Rule 10B, filed by the ward's son, Paul Milem, seeking to recuse the trial judge in this case. Having reviewed the petition for recusal appeal filed by Mr. Milem, and finding no error, we affirm.

### Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Probate Court Affirmed

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Juliet Hill-Akines, Memphis, Tennessee, for the appellant, Paul Milem.

Marjorie S. Baker, Memphis, Tennessee, for the appellee, ElderCare Consultants, LLC.

## OPINION

### Background

The underlying appeal concerns a conservatorship action. In November 2019, a petition for appointment of a conservator was filed in the Shelby County Probate Court (the "Trial Court") by co-petitioners, Paul Milem and Alice Milem. The Trial Court initially appointed Alice Milem as conservator for the ward, David William Milem (the "ward"). Alice Milem was removed as conservator for the ward in March 2023. Thereafter, the Trial Court appointed ElderCare Consultants, LLC ("ElderCare"), as a successor conservator for the ward. The ward's son, Paul Milem ("Son"), alleges that

ElderCare initially denied Son visitation with the ward and that when they allowed visits, the medical facility set strict hours for visitation and required that the visits be monitored.

Son subsequently filed a motion to alter or amend the judgment appointing a successor conservator, asking that he and attorney Kim Sims be appointed as successor co-conservators for the ward. Son states in his petition with this Court that the motion to alter or amend was denied without the Trial Court hearing testimony pertaining to the motion.[1] On May 10, 2023, the Trial Court ordered that Son submit to an accounting of the ward's property. Son and Kim Sims subsequently filed an intervening petition in June 2023, requesting they be appointed as co-conservators for the ward.

The Trial Court scheduled a hearing for August 2023 regarding the intervening petition for appointment of a successor conservator filed by Son and Kim Sims. Son alleged in his petition with this Court that the Trial Court accused Son of not being ready, stated that only an hour had been reserved for the hearing, and called an ElderCare representative as the first witness. According to Son, the Trial Court allowed ElderCare to keep the ward in a facility and rescheduled the trial for September 2023.

During the trial in September 2023, the Trial Court again called an ElderCare representative as the first witness, who was allegedly ill prepared. The representative stated during trial that the ward was $50,000 in debt; however, the Trial Court did not require ElderCare to provide an accounting or evidence of such debt. Son states in his petition that although the trial was scheduled for Kim Sims and Son's intervening petition to appoint a successor conservator, the Trial Court elected not to allow Son's witnesses to testify. Instead, the Trial Court allegedly ordered that the ward's commercial building be sold without requiring any evidence from ElderCare regarding the ward's finances "other than arbitrary figures stated in open court" by an ElderCare representative. Additionally, the Trial Court ordered that Son's residence be investigated by ElderCare for safety reasons. Although Son requested a neutral party perform the investigation, the Trial Court denied the request. Son alleges that a representative with ElderCare arrived at his home with police and accused Son of hiding the ward, who was at the hospital at the time. According to Son, he had to take his daughter to an emergency doctor's appointment due to an injury during the time of the home safety inspection.

---

[1] The order denying the motion to alter or amend is not in the record provided on appeal. Although not explicitly stated as such in the rule, it is clear that the only record the appellate court generally will have in expedited appeals under Rule 10B is the record provided by the appellant with his or her petition pursuant to the mandatory language of section 2.03 of the rule. *See* Tenn. Sup. Ct. R. 10B, § 2.03 ("The petition shall be accompanied by a copy of the motion and all supporting documents filed in the trial court, a copy of the trial court's order or opinion ruling on the motion, and a copy of any other parts of the trial court record necessary for determination of the appeal.").

Son alleges that at a status hearing in October 2023 that was conducted via Zoom, Son's counsel attempted to inform the Trial Court of the circumstances surrounding the inspection visit but that the Trial Court chose to disregard the information.[2]  ElderCare presented a property management plan to the Trial Court that included a recommendation to sell the ward's home and a commercial property, which Son alleges the Trial Court indicated resulted from Son's "failure to cooperate with the sale of the commercial property."

Son filed his first motion to recuse Judge Kathleen N. Gomes (the "Trial Judge"), which was subsequently dismissed due to Son's noncompliance with the requirements of Tennessee Supreme Court Rule 10B.  Thereafter, Son filed a second motion for recusal, which included the required affidavits.  In his second motion, Son made allegations of bias regarding adverse decisions against Son in the underlying proceedings, bias in favor of ElderCare because its attorneys had contributed to the Trial Judge's campaign, and bias due to a "lengthy friendship" between the Trial Judge and an attorney for ElderCare. However, the Trial Court found that Son had not complied with the requirement of section 1.01 of Rule 10B by including the "mandatory language." Therefore, the Trial Court dismissed the second motion for recusal.  Subsequently, Son timely filed this accelerated interlocutory appeal as of right, pursuant to Tennessee Supreme Court Rule 10B, from the Trial Court's November 17, 2023 order dismissing his second motion for recusal.

## Issues

Son raises the following issues for review in this Tennessee Supreme Court Rule 10B appeal, which have been restated slightly: (1) whether the Trial Court erred by failing to demonstrate impartiality and fairness in the underlying proceeding; (2) whether the Trial Court exercised bias, prejudice or harassment toward Son during the proceedings below; and (3) whether the Trial Court had failed to promote confidence in the judiciary.

## Standard of Review

In his petition, Son incorrectly characterizes this appeal as being subject to the standards provided in Tennessee Rule of Appellate Procedure 9 for interlocutory appeals by permission.  Instead, interlocutory appeals of right from the denial of recusal motions are governed by Tennessee Supreme Court Rule 10B.  We review a trial court's ruling on a motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01.  "The party seeking recusal bears the burden of proof, and 'any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case.'" *Neamtu v. Neamtu*, No. M2019-00409-COA-T10B-CV, 2019

---

[2] Although Son mentions allegations of *ex parte* communications in the facts section of his petition filed with this Court pursuant to Rule 10B, Son does not include it in the argument section of his petition.

WL 2849432, at *2 (Tenn. Ct. App. July 2, 2019), *no perm. app. filed*, (quoting *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015), *no perm. app. filed*). As this Court explained in *Neamtu*:

> The party seeking recusal bears the burden of proof. *Williams*, 2015 WL 2258172, at *5; *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke* [*v. Duke*], 398 S.W.3d [665,] 671 [(Tenn. Ct. App. 2012)] (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "**The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'**" *Id.* (quoting *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)).

*Neamtu*, 2019 WL 2849432, at *3 (quoting *In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016), *no perm. app. filed*) (emphasis in original).

Furthermore, "a judge should not decide to recuse unless a recusal is truly called for under the circumstances." *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008), *no perm. app. filed*. This is true because "'[a] judge has as much of a duty not to recuse himself absent a factual basis for doing so as he does to step aside when recusal is warranted.'" *Id*. at *2 (quoting *Mass v. McClenahan*, No. 93 Civ. 3290 (JSM), 1995 WL 106106, at *1 (S.D.N.Y. Mar. 9, 1995)). Recusal based upon an asserted appearance of bias or prejudice "is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *Id*. at *2 (quoting *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981)).

#### Discussion

We have determined in this case, after a review of the petition and supporting documents submitted with the petition, that an answer, additional briefing, and oral

- 4 -

argument are unnecessary to our disposition because the record provided by Son does not demonstrate error by the Trial Judge with regard to the denial of Son's second motion for recusal. As such, we have elected to act summarily on this appeal in accordance with sections 2.05 and 2.06 of Rule 10B. *See* Tenn. Sup. Ct. R. 10B, § 2.05 ("If the appellate court, based upon its review of the petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court[.]"); § 2.06 ("An accelerated interlocutory appeal shall be decided by the appellate court on an expedited basis. The appellate court's decision, in the court's discretion, may be made without oral argument.").

The Trial Court dismissed Son's second motion for recusal, which is currently being appealed to this Court, due to his failure to comply with the technical requirements of Tennessee Supreme Court Rule 10B, section 1.01. Section 1.01 of Rule 10B states, in pertinent part, that "[t]he motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Son's second motion to recuse does not include a statement that the motion was "not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." We note that the affidavit attached to the motion executed by Son's attorney includes a statement that the filing of the motion to recuse "was not filed for any improper purpose to cause an unnecessary delay or needless increase in cost of litigation, it was due to my 'naivety' as it related to Courts favors for-profit organizations over family participation and care." However, with the motion itself lacking the required language, the Trial Court is correct that there is no technical compliance with Rule 10B, section 1.01. Nonetheless, we have reviewed the allegations in Son's second motion for recusal and find no basis for recusal.[3]

The majority of Son's allegations involve adverse rulings during the trial court proceedings that Son equates to bias against him. Aside from the allegations where Son simply disagreed with the Trial Court's rulings, Son further alleges that the Trial Judge would not allow Son's witnesses to testify during the September 2023 hearing that had been held with regard to the request to be appointed as the ward's new conservator, as well as his allegation that the Trial Court disregarded Son's explanation regarding

---

[3] We remind litigants that strict compliance with Rule 10B in the first instance is required, and we may not choose to proceed with review in similar situations in the future. *See Neamtu*, 2019 WL 2849432, at *2 (quoting *Watson v. City of Jackson*, 448 S.W.3d 919, 928 (Tenn. Ct. App. 2014)) (stating "we caution litigants that 'while in this case we chose to proceed with our review despite the fact that the parties chose not to abide by the rules of th[e Tennessee Supreme] Court, we cannot say we will be so accommodating and choose to do the same in the future.'").

circumstances surrounding the inspection visit. During the September hearing, the Trial Court heard testimony from Son. After Son's testimony, the Trial Judge acknowledged that Son had witnesses present to testify during the hearing. However, the Trial Judge brought up the ward's lack of financial resources and expressed a desire to send the ward home if possible. Additionally, the Trial Judge stated that she would not send the ward home without an evaluation of the home. Due to the dire state of the ward's finances, the Trial Judge ordered that commercial property be sold from the estate and ordered an assessment of the home where the ward would reside. The Trial Judge stated that she was not going to change the conservator until the financial situation was resolved but would be more willing to do so once the finances were straightened out. At that time, the Trial Judge approved moving the ward back home following an inspection of the home if the home was deemed safe, without further approval of the Trial Court required. That did not happen because the inspection was not completed. After Son was unavailable for the scheduled inspection, a subsequent hearing was held in October 2023, wherein Son's attorney informed the Trial Judge of the circumstances surrounding the date of inspection, as well as the deaths that had occurred in counsel's family. The Trial Judge expressed displeasure that Son had still not completed the home inspection several weeks later. Discussions were had regarding the commercial property with regard to a fence and dogs being removed from the property prior to the sale of the property. The Trial Judge informed Son that they were "starting over" and asked Son to identify a convenient time for ElderCare to come assess the home.

Adverse rulings and a litigant's resultant unhappiness with the rulings, even if the Trial Court's rulings are erroneous and numerous, are insufficient, without more, to justify recusal. Without question, "[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see also* Tenn. Const. Art. VI, § 11. This constitutional right "is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" *Id.* (quoting *Austin*, 87 S.W.3d at 470). "[P]reservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); *see also Offutt v. United States*, 348 U.S. 11, 14 (1954) (holding that "justice must satisfy the appearance of justice"). As such, Rule 2.11(A) of the Code of Judicial Conduct as set forth in Rule 10 of the Rules of the Supreme Court of Tennessee requires a judge to recuse himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned." *See also Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (noting that recusal is required, even if a judge subjectively believes he or she can be fair and impartial, whenever "the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias" (quoting *Bean*, 280 S.W.3d at 805)).

The terms "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party"; however, "[n]ot every bias, partiality, or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* "If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.* "However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Id.* That said, "[a] trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *see also Alley*, 882 S.W.2d at 821. In fact, "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley*, 882 S.W.2d at 821; *see also State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006). In other words, "[i]f the bias is alleged to stem from events occurring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014). In this case, we cannot conclude that the record provided by Son demonstrated that bias against him was so pervasive such that Son was denied a fair trial. Specifically, the Trial Judge articulated reasons for the decisions she made with regard to whether to allow testimony, and Son has not established that those reasons were based on some personal animosity or bias.

Aside from the allegations that relate to the Trial Court's decisions made within the confines of the case, Son also makes allegations that attorneys representing ElderCare had contributed to the Trial Judge's campaign and that such contributions required recusal. In *Collier v. Griffith*, this Court discussed the reality of judicial elections stating:

> Political fund raising will be an unfortunate necessity as long as judges are required to seek or retain their offices through contested elections. *MacKenzie v. Super Kids Bargain Store, Inc.,* 565 So.2d 1332, 1335 (Fla. 1990); *Rocha v. Ahmad,* 662 S.W.2d 77, 78 (Tex. Ct. App. 1983).

> * * *

> As long as judges must be elected, members of the bar will play active roles in their campaigns and will be a principal source of campaign contributions. While all parties must be aware of the ethical implications and possible appearance of this activity, the fact that a judge has received contributions from an attorney for one of the parties is not grounds for automatic disqualification. The same may be said for attorneys who simply

endorse a judicial candidate or who are listed on a judge's campaign committee. *Nathanson v. Korvick,* 577 So.2d 943, 944 (Fla. 1991); *In re Petition to Recall Dunleavy,* 769 P.2d 1271, 1275 (Nev. 1988); *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 842-45 (Tex. Ct. App. 1987); Jeffery M. Shaman, Steven Lubet & James J. Alfini, *Judicial Conduct and Ethics* § 11.16, at 353-54 (1990).

However, recusal may be required if an attorney for one of the parties is more actively involved in a judge's campaign. Several courts have found that grounds for disqualification exist when an attorney for one of the parties has a leadership role in a judge's currently active campaign committee. *MacKenzie v. Super Kids Bargain Store, Inc.,* 565 So.2d at 1338 n.5; *Barber v. MacKenzie,* 562 So.2d 755, 757-58 (Fla. Dist. Ct. App. 1990); *Caleffe v. Vitale,* 488 So.2d 627, 629 (Fla. Dist. Ct. App. 1986); *see also Gluth Bros. Constr. Co. v. Union Nat'l Bank,* 548 N.E.2d 1364, 1368 (Ill. App. Ct. 1989). The judicial ethics advisory committees in New York, South Carolina, and Washington have reached the same conclusion when the parties, with full knowledge of the facts, have not consented to the judge's continued participation in the case. American Judicature Society, *The Digest of Judicial Ethics Advisory Opinions* 412, 487, 555 (D.L. Solomon, ed. 1991), citing N.Y. Advisory Opinion No. 89-107 (Sept. 12, 1989); S.C. Advisory Opinion No. 5-1982 (1982); Washington Advisory Opinion No. 88-7 (Mar. 16, 1988).

*Collier v. Griffith*, No. 01-A-019109CV00339, 1992 WL 44893, at *6 (Tenn. Ct. App. March 11, 1992), *no perm. app. filed*.

The Code of Judicial Conduct contained in Rule 10 of the Rules of the Supreme Court provides, in pertinent part:

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

* * *

(4) The judge knows or learns by means of a timely motion that a party, a party's lawyer, or the law firm of a party's lawyer has made contributions or given such support to the judge's campaign that the judge's impartiality might reasonably be questioned.

Tenn. S. Ct. R. 10, RJC 2.11. Comment 7 to Rule 2.11 clarifies that contributions to a judge's campaign or support given to the judge's election by either a party or a party's attorney, however, does not in and of itself require recusal. Comment 7 states: "Absent other facts, campaign contributions within the limits of the 'Campaign Contributions Limits Act of 1995,' Tennessee Code Annotated Title 2, Chapter 10, Part 3, or similar law should not result in disqualification." Tenn. S. Ct. R. 10, RJC 2.11, Comment 7. Comment 7 explains that:

> [C]ampaign contributions or support a judicial candidate receives may give rise to disqualification if the judge's impartiality might reasonably be questioned. In determining whether a judge's impartiality might reasonably be questioned for this reason, a judge should consider the following factors among others:
>
> (1) The level of support or contributions given, directly or indirectly, by a litigant in relation both to aggregate support (direct and indirect) for the individual judge's campaign and to the total amount spent by all candidates for that judgeship;
> (2) If the support is monetary, whether any distinction between direct contributions or independent expenditures bears on the disqualification question;
> (3) The timing of the support or contributions in relation to the case for which disqualification is sought; and
> (4) If the supporter or contributor is not a litigant, the relationship, if any, between the supporter or contributor and (i) any of the litigants, (ii) the issue before the court, (iii) the judicial candidate or opponent, and (iv) the total support received by the judicial candidate or opponent and the total support received by all candidates for that judgeship.

Tenn. S. Ct. R. 10, RJC 2.11, Comment 7.

This Court discussed Rule 2.11 and Comment 7 in the case of *In re Gabriel V.* stating:

> Thus[,] the fact that an attorney has contributed to a judge's campaign, has endorsed a judge's candidacy, or has been listed on a judge's campaign committee will not require automatic disqualification of the judge. However, recusal may be required if an attorney is more actively involved in the judge's campaign or serves in a leadership role.

*In re Gabriel V.*, No. M2014-01298-COA-T10B-CV, 2014 WL 3808916, at *3 (Tenn. Ct. App. July 31, 2014), *no perm. app. filed.*

In this case, Son alleged that the lawyers representing ElderCare have contributed to the Trial Judge's campaign. Son does not allege that the attorneys were "actively involved" in the Trial Judge's campaign. Merely contributing to the campaign of the Trial Judge does not necessitate recusal. Son failed to demonstrate any support that would rise to the level wherein the judge's impartiality might reasonably be questioned.

Additionally, Son alleges a "lengthy friendship" between the Trial Judge and one of ElderCare's attorneys, Marjorie S. Baker. However, "[t]he mere existence of a friendship between a judge and an attorney is not sufficient, standing alone, to mandate recusal." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *see also State v. Madden*, No. M2012-02473-CCA-R3-CD, 2014 WL 931031, at *7 (Tenn. Crim. App. Mar. 11, 2014) ("Simply establishing that a trial judge is acquainted with a lawyer or other person connected to a case does not, without more, suffice to establish an abuse of discretion in the denial of a recusal motion."). Son provides no supporting information describing the alleged friendship or the extent of such friendship other than it began in 2001 or 2002 when Ms. Baker was a clerk for the prior judge. This Court has held that the "Code of Judicial Conduct does not require judges to remain isolated from other members of the bar and from the community." *Cannon*, 254 S.W.3d at 308. Son has not demonstrated a friendship between the Trial Judge and Ms. Baker that would cause the judge's impartiality to reasonably be questioned.

Upon thorough review of the record and considering cumulatively all of the above actions by the Trial Court, we conclude that Son has failed to produce evidence that would prompt a person of ordinary prudence in the Trial Court's position, with knowledge of all facts known to the Trial Court, to find a "reasonable basis for questioning the judge's impartiality." *See Adams v. Dunavant*, 674 S.W.3d 871, 878 (Tenn. 2023). Therefore, we discern no error in the Trial Court's denial of Son's second motion for recusal.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's denial of the second motion for judicial recusal. The costs of this appeal are taxed to Paul Milem, for which execution may issue. This case is remanded for further proceedings.[4]

_____
KRISTI M. DAVIS, JUDGE

---

[4] Son's motion to stay the underlying trial court proceedings that was filed with this Court is denied as moot.